UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                          Plaintiff,

          – against –

EAST RIVER HOUSING CORP.,

                          Defendant.

**OPINION AND ORDER**
13 Civ. 8650 (ER)

Ramos, D.J.:

        Defendant, East River Housing Corporation ("East River" or "Defendant") is a private

1,672-unit housing cooperative on Manhattan's Lower East Side.  Am. Compl. ¶ 7 (Doc. 3).

Stephanie Aaron ("Aaron"), Amy Eisenberg ("Eisenberg"), and Steven Gilbert ("Gilbert")

(collectively, "Complainants") are proprietary lessees of East River apartments.  *Id.* ¶¶ 8, 11, 14.

All three are subject to Proprietary Leases and House Rules that prohibit tenants from keeping

dogs and other animals in East River buildings without "prior written consent."  *Id.* ¶¶ 34, 55, 70.

Neither the Proprietary Leases nor the House Rules contain reference to any policies or

procedures for granting reasonable accommodations to individuals who require service or

emotional support animals because of a disability.  *Id.* ¶ 32.

        Complainants suffer from varying forms and degrees of psychiatric illness.  *Id.* ¶¶ 33, 54,

69.  At different times, all three brought dogs into their apartments—apparently without prior

written consent—and found that, as a result, the symptoms of their illnesses were alleviated.  *Id.*

¶¶ 36, 56-57, 71.  Each complainant, after being told to "cure" the violation of his or her lease by

removing the dog from his or her apartment, and being threatened with eviction, requested

permission to keep a dog as a reasonable accommodation to his or her disability, which East River in all cases ignored or denied.  *Id.* ¶¶ 39-45, 62-68, 74-75, 82-85.

In this action, the United States Attorney's Office for the Southern District of New York (the "Government") brings suit against East River under the Fair Housing Act (FHA), 42 U.S.C. §§ 3601 *et seq.* as amended.  The Government alleges that East River, by denying Complainants the right to keep service or emotional support animals in their apartments, discriminated against Complainants on account of their disabilities in violation of the FHA.  *Id.*¶¶ 86-91; 42 U.S.C. §§ 3604(f)(1)(A), (f)(2), (f)(3)(B).[1]  The Government also claims that East River retaliated against Gilbert in violation of 42 U.S.C. § 3617 by threatening to pursue a claim for attorneys' fees against Gilbert or to consider the cost of those fees "additional rent," and by requesting excessive and intrusive information from Gilbert and his healthcare providers in connection with his request for a reasonable accommodation.[2]  Am. Compl. ¶ 93.  Finally, in addition to its claims on behalf of Aaron, Eisenberg, and Gilbert, the Government alleges that East River's conduct constitutes a pattern or practice of resistance to the full enjoyment of rights granted by the FHA, and/or a denial to a group of persons of rights granted by the FHA raising an issue of general public importance, in violation of 42 U.S.C. § 3614.[3]  *Id.* ¶¶ 95-97.

---

[1] The Amended Complaint alleges violations of 42 U.S.C. §§ 3604(f)(1)(A), (f)(2), and (f)(3)(B).  Section 3604(f)(1)(A) renders it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter."  42 U.S.C. § 3604.  Section 3604(f)(2) renders it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap."  *Id.* § 3604(f)(2).  Section 3604(f)(3)(B) explains that discrimination under the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  *Id.* § 3604(3)(B)

[2] Section 3617 makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606" of the FHA.  42 U.S.C.A. § 3617.

[3] Section 3614, titled "pattern or practice cases," provides, "Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of

At present, the Court considers three motions:  the Government's motion to strike East River's Second Affirmative Defense; East River's motion for partial summary judgment as to the claims pertaining to Stephanie Aaron (the "Aaron claims") and to sever the causes of action pertaining to Eisenberg and Gilbert (the "Eisenberg claims" and "Gilbert claims"); and East River's separate motion to dismiss and/or for summary judgment on the Government's Fifth Cause of Action, which alleges a "pattern or practice" violation under § 3614.  Docs. 22, 27, 30. For the following reasons, the Government's motion to strike is GRANTED, and both of Defendant's motions are DENIED.

## I.  Factual Background and Procedural History[4]

### A.  Stephanie Aaron

Stephanie Aaron has been the proprietary lessee of an East River apartment since at least 2003.  Am. Compl. ¶ 8.  Aaron suffers from "chronic major depression, anxiety, and post-traumatic stress disorder [("PTSD")]," which have "impacted her ability to socialize, maintain relationships, sleep, and concentrate" and "exacerbate[d] her asthma."  *Id.* ¶ 33.  According to the Amended Complaint, she is a person with a disability under the FHA.  *Id.* (citing 42 U.S.C. § 3602(h)).

In August 2012, Aaron experienced a "resurgence of her depression and anxiety symptoms" and "was often physically ill, unable to socialize, and overwhelmed by her

---

any of the rights granted by [the FHA], or that any group of persons has been denied any of the rights granted by [the FHA] and such denial raises an issue of general public importance, the Attorney General may commence a civil action in any appropriate United States district court."  42 U.S.C.A. § 3614.

[4] The following facts are drawn from the Amended Complaint, Doc. 3, and the parties' Statements of Material Facts submitted in support of and opposition to Defendant's motion for partial summary judgment.  Doc. 27.  For purposes of the Government's motion to strike, Doc. 22, the Court assumes as true the allegations in Defendant's Answer concerning its Second Affirmative Defense.  For the purposes of Defendant's motion to dismiss Plaintiff's Fifth Cause of Action, Doc. 30, the Court assumes the allegations in Plaintiff's Amended Complaint to be true and relies exclusively on the information contained in the Amended Complaint.  However, Defendant has submitted additional evidence in connection with its two motions for partial summary judgment, and the Court will consider those additional facts and documents in determining those motions.

circumstances, which included working in a stressful work environment with an uncertain future with her employer." *Id.* ¶ 35. On or about August 22, 2012, Aaron took in a stray dog and named it "Rosie." *Id.* ¶ 36. She allegedly noticed an improvement in her mental condition within a few days and therefore decided to keep the dog. *Id.*

On September 14, 2012, East River sent Aaron a "10 Day Notice to Cure," stating that she had violated a substantial obligation of her tenancy by keeping an animal in her apartment and demanding that she remove the dog. *Id.* ¶ 37. After Aaron received the Notice to Cure, her mental condition purportedly worsened, and she paid a visit to Dr. Lori Plutchik ("Dr. Plutchik"), a psychiatrist she had visited during 2008-2011. *Id.* ¶ 38. On September 20, 2012, Aaron submitted a "request for reasonable accommodation" accompanied by a letter from Dr. Plutchik asking that Aaron be permitted to keep Rosie as a "service dog and emotional support animal." *Id.* ¶ 39. East River did not respond to this request and, instead, sent Aaron a "10 Day Notice of Termination" on October 18, 2012, stating that she would need to vacate her apartment by November 6, 2012. *Id.* ¶¶ 40-41. Aaron submitted a second "request for reasonable accommodation" on October 24, 2012, again attaching Dr. Plutchik's letter. *Id.* ¶ 42. East River denied this request by letter dated November 5, 2012 "on the ground that Dr. Plutchik's letter did not use the word 'disabled.'" *Id.* ¶ 43.

On November 11, 2012, Aaron received a "Notice of Petition Holdover" informing her that a "Summary Holdover Proceeding" regarding her eviction would take place on November 29, 2012 in Manhattan Housing Court ("Housing Court"). *Id.* ¶ 44. Via her attorney, Karen Copeland, Aaron submitted a third reasonable accommodation request on November 15, 2012, again attaching Dr. Plutchik's letter. *Id.* ¶ 45. In March 2013, East River moved in Housing Court for summary judgment against Aaron and for entry of a judgment of possession and

4

issuance of a warrant of eviction.  *Id.* ¶ 49.  A Housing Court judge granted summary judgment

in favor of East River and awarded East River a final judgment of possession on April 30, 2013.

*Id.* ¶ 51.[5]

Meanwhile, on December 11, 2012, Aaron filed a verified complaint with the United

States Department of Housing and Urban Development ("HUD"), alleging that East River had

discriminated against her on the basis of disability by refusing to permit her to keep a dog as a

reasonable accommodation to her psychiatric disability.[6]  *Id.* ¶ 47; Silverbush Cert. (Doc. 28),

Ex. J.  By letter dated December 12, 2012, HUD informed Aaron that it had referred her

complaint to the New York State Division of Human Rights ("DHR") pursuant to 42 U.S.C.

§ 3610(f).[7]  *Id.*, Ex. K.  The letter stated that DHR would "take all further action" on Aaron's

complaint unless DHR failed to begin processing it within 30 days, in which case HUD would

take it up again.  *Id.*  Additionally, the letter advised Aaron that, if she did not agree with DHR's

final decision, she could "appeal in accordance with [DHR's] procedures" or file a civil lawsuit

in Federal District Court, but that she could not appeal DHR's decision to HUD.  *Id.*

---

[5] The Housing Court stayed the eviction proceeding against Aaron on December 6, 2013, pending resolution of the instant case.  *Id.* ¶¶ 51-53.  Since then, the parties have continued to litigate the matter of Aaron's eviction in this Court, and the Court has enjoined East River from taking any steps to evict Aaron from her apartment or to remove Aaron's dog during the pendency of these proceedings.  *See* Order Granting Prelim. Injunction (Doc. 67)

[6] Pursuant to 42 U.S.C. § 3610(a)(1)(A)(i), within one year of an alleged discriminatory housing practice, an aggrieved person may file a complaint with the Secretary of HUD (the "Secretary"), or the Secretary may file such a complaint on the Secretary's own initiative.

[7] Section 3610(f) provides, "Whenever a complaint alleges a discriminatory housing practice . . . within the jurisdiction of a State or local public agency; and . . . as to which such agency has been certified by the Secretary under this subsection[,] the Secretary shall refer such complaint to that certified agency before taking any action with respect to such complaint."  42 U.S.C. § 3610.  The Secretary may certify an agency under § 3610 only if "(i) the substantive rights protected by such agency in the jurisdiction with respect to which certification is to be made; (ii) the procedures followed by such agency; (iii) the remedies available to such agency; and (iv) the availability of judicial review of such agency's action . . . are substantially equivalent to those created by and under this subchapter."  *Id.* § 3610(f)(3)(A).  In its December 12, 2012 letter, HUD declared that it had "determined that the fair housing law that [DHR] enforces is substantially equivalent to the Act" and that DHR "has the authority to address discrimination within the area where [Aaron's] complaint arose."  Doc. 28, Ex. K.

DHR's resultant investigation included a review of Aaron's complaint, East River's response, letters exchanged by the parties, a medical questionnaire provided by Aaron's doctor, and interviews with Aaron herself.  *Id.*, Exs. L, M, N, O.  The investigation did not entail any exchange of discovery between the parties, and DHR did not hold any hearing.  Gov't's Opp'n to Def.'s Mot. for Partial Summ. J. at 3 (Doc. 40).  On April 23, 2013, DHR issued a "Determination and Order After Investigation" ("Determination") stating that there was no probable cause to believe that East River had engaged in or was engaging in unlawful discriminatory practices.  Doc. 28, Ex. P.  The Determination declared, "While it is clear that having a dog is emotionally beneficial to Complainant and makes her happy, the evidence does not establish that it is necessary for the use and enjoyment of her residence."  *Id.*

Yet on May 7, 2013, DHR reopened and reactivated Aaron's complaint pursuant to Rule 20(a) of its own Rules of Practice.  *See* Frey Decl. ¶ 4 & Ex. B at 1; 9 N.Y.C.R.R. § 465.20(a) (noting that DHR may, on its own motion, whenever justice requires, reopen a proceeding, determination or record and take such action as may be deemed necessary).  On May 22, 2013, DHR transferred the complaint back to HUD "for reconsideration and for such other or further action as deemed appropriate."  Doc. 28, Ex. S.  DHR then dismissed the reopened complaint from its own docket on grounds of "administrative convenience," concluding that "the interests of justice will best be served by HUD reactivating [Aaron's] HUD complaint, which HUD has agreed to do."  *Id.*, Ex. T, at 1.  In its dismissal order, dated June 14, 2013, DHR explained that "[p]ursuant to a cooperative agreement . . . [DHR] and HUD may mutually agree that an investigation will be completed by HUD."  *Id.*  DHR further emphasized that, under § 297(9) of the New York Human Rights Law, "where [DHR] has dismissed [a] complaint on the grounds of

administrative convenience, . . . [an aggrieved person] shall maintain all rights to bring suit as if no complaint had been filed." *Id.* at 2.

HUD thereafter conducted and completed its own investigation and concluded, contrary to DHR's determination, that reasonable cause existed to believe that East River had discriminated against Aaron in violation of the FHA.  Am. Compl. ¶¶ 18-19; 42 U.S.C. § 3610(g)(1).  On October 23, 2013, the HUD Secretary (the "Secretary") issued a charge of discrimination against East River pursuant to 42 U.S.C. § 3610(g)(2)(A).[8]  Am. Compl. ¶ 20.  On November 8, 2013, East River elected, pursuant to 42 U.S.C. § 3612(o), to have the claims asserted in HUD's charge of discrimination decided in a civil action in United States District Court instead of at an administrative hearing.[9]  *Id.* ¶ 21.  The Secretary consequently authorized the Attorney General to file this action on Aaron's behalf pursuant to 42 U.S.C. § 3612(o)(1).  *Id.*

In the interim, while HUD was conducting its investigation, East River opened a parallel litigation track.  On August 13, 2013, East River filed a petition against DHR, pursuant to Article 78 of the New York Civil Practice Laws and Rules ("C.P.L.R."), in the Supreme Court, New York County ("Article 78 Petition"), seeking annulment of the June 14, 2013 DHR Order that dismissed Aaron's complaint on the basis of administrative convenience.  Doc. 28, Ex. U.  That petition was denied on October 24, 2013 by the Honorable Cynthia S. Kern, and East River

---

[8] Following the filing of an FHA complaint, the Secretary is directed to "determine . . . whether reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur."  *Id.* § 3610(g)(1).   If the Secretary determines that reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur, the Secretary "shall . . . immediately issue a charge on behalf of the aggrieved person . . . ."  *Id.* § 3610(g)(2).

[9] After the issuance of a charge of discrimination, the Secretary must provide an opportunity for a hearing on the record before an administrative law judge.  *Id.* § 3612(b).  However, a complainant, a respondent, or an aggrieved person on whose behalf a complaint was filed may elect to have the claims decided in a civil action rather than in a hearing.  *Id.* § 3612(a).  If the court in such a civil action concludes that a discriminatory housing practice has occurred or is about to occur, "the court may grant as relief any relief which a court could grant with respect to such discriminatory housing practice in a civil action under [§ 3613]," which provides for enforcement by private persons.  *Id.* § 3612(o)(3).

challenged Judge Kern's decision in the Appellate Division, First Department. *Id.*, Exs. W, Y. On April 17, 2014, the Appellate Division issued a decision and order ("Appellate Division Order") reversing Judge Kern's denial of East River's Article 78 Petition and annulling DHR's administrative convenience dismissal. *See E. River Hous. Corp. v. New York State Div. of Human Rights*, 116 A.D.3d 562, 563, 984 N.Y.S.2d 331, 331 (App. Div. 2014); Doc. 28, Ex. BB. The Appellate Division's three-page decision, which contained no facts or analysis regarding Aaron's underlying discrimination claim, stated that DHR's administrative convenience dismissal had been "'purely arbitrary' and issued in contravention of [DHR's] own rules . . . ." *Id.* at 46. The decision contained "no indication that the Appellate Division was made aware of HUD's investigation, HUD's issuance of a charge of discrimination, East River's election [to proceed in Federal District Court], or the action in this Court," which the Government had filed on December 5, 2013, months before the Appellate Division issued its decision. Doc. 40 at 6.

The foregoing complicated trajectory of the complaint that Stephanie Aaron filed with HUD and the Article 78 petition that East River filed in the New York Supreme Court is the subject of Defendant's motion for partial summary judgment. *See infra* Part III.

### B.  Amy Eisenberg

Amy Eisenberg has been a proprietary lessee of an apartment at East River since at least 1998. Am. Compl. ¶ 11. She suffers from PTSD with symptoms including depression, anxiety, panic attacks, and insomnia. *Id.* ¶ 54. On February 15, 2012, without having obtained East River's written consent, she brought a trained, registered service dog named "Ruby" into her apartment. *Id.* ¶¶ 56, 58. According to the Amended Complaint, Ruby provides emotional support, eases the symptoms of Eisenberg's PTSD, and has been trained to complete such tasks as retrieving Eisenberg's medication if Eisenberg becomes incapacitated. *Id.* ¶¶ 57-58.

On April 25, 2012, East River issued a "10 Day Notice to Cure" requiring that Eisenberg remove Ruby from her apartment by May 11, 2012. *Id.* ¶ 59.  On May 17, 2012, East River sent Eisenberg a "10 Day Notice of Termination" requiring that she vacate her apartment by June 1, 2012. *Id.* ¶ 60.  On June 4, 2012, Eisenberg received a "Notice of Petition Holdover," informing her that a Summary Holdover Proceeding would be held in Manhattan Housing Court on June 18, 2012. *Id.* ¶ 61.  That trial date was later adjourned to February 19, 2013. *Id.*

In the meantime, Eisenberg's internist, Dr. Raymond Keller ("Dr. Keller"), sent a letter to East River stating that Eisenberg had a disability and that he had prescribed that she obtain an emotional support dog in order to alleviate her stress and anxiety, enhance her ability to live independently, and fully use and enjoy her apartment. *Id.* ¶ 62.  On February 19, 2013, Eisenberg appeared in Housing Court *pro se* and "stated that Ruby is a service animal that she is entitled to keep in her apartment based on a documented medical need." *Id.* ¶ 64.  The case was adjourned for East River to evaluate Eisenberg's claim. *Id.*  East River ultimately did not grant her request for an accommodation and did not contact Eisenberg again to discuss her request. *Id.*

On March 22, 2013, Eisenberg retained an attorney, who filed an amended answer to East River's Housing Court complaint asserting defenses including an affirmative defense under the Fair Housing Act. *Id.* ¶ 65.  On April 9, 2013, Eisenberg filed a motion for relief in Housing Court and attached exhibits, including Dr. Keller's letter and documents to verify Ruby's registration as a service dog. *Id.* ¶ 66.  Eisenberg's case in Housing Court was adjourned for trial multiple times, *id.* ¶¶ 67-68, and the Court is presently unaware of the occurrence or outcome of any further Housing Court proceedings regarding Eisenberg's eviction.

On May 29, 2013, Eisenberg filed a complaint with HUD. *Id.* ¶ 22.  After investigating Eisenberg's allegations, HUD determined that reasonable cause existed to believe East River had

violated the FHA by discriminating against Eisenberg.  *Id.* ¶¶ 23-24.  On December 10, 2013, the

Secretary issued a charge of discrimination against East River, which East River elected to have

resolved in a federal civil action, and the Secretary authorized the Attorney General to file suit

on Eisenberg's behalf pursuant to 42 U.S.C. § 3612(o)(1).  *Id.* ¶¶ 25-26.

### C.  Steven Gilbert

Steven Gilbert has been a proprietary lessee of an East River apartment since at least

2004.  *Id.* ¶ 14.  He suffers from "chronic psychiatric conditions, which limit his ability to

engage in social interactions and to cope with stress and anxiety."  *Id.* ¶ 69.  In November 2011,

Gilbert hosted a guest and her dog, Olive Oil, in his East River apartment and found that his

psychiatric condition improved.  *Id.* ¶ 71.  On November 23, 2011, East River sent Gilbert a "10

Day Notice to Cure," requiring him to remove the dog from his apartment by December 8, 2011.

*Id.* ¶ 72.  On December 9, 2011, East River sent Gilbert a "10 Day Notice of Termination,"

indicating that Gilbert would need to vacate his apartment by December 26, 2011.  *Id.* ¶ 73.

Gilbert submitted a reasonable accommodation request to East River on December 21,

2011, asking that he be allowed to keep Olive Oil in order to mitigate the symptoms of his

disability.  He attached a letter from his treating psychiatrist, Dr. Laurie Gordon ("Dr. Gordon"),

stating that "[t]he presence of this animal is necessary for [Gilbert's] mental health."  *Id.* ¶ 74.

East River did not respond, and on January 23, 2012, Gilbert received a "Notice of

Petition Holdover," informing him that a proceeding regarding his eviction would take place in

Housing Court on February 7, 2012.  *Id.* ¶ 75.  Gilbert then wrote to East River and "expressed

surprise that East River did not find 'a letter from a board-certified psychiatrist sufficient to

terminate' the eviction action and reiterated that [he] is a disabled person under the [FHA]."  *Id.*

¶ 76.  He nonetheless agreed to remove the dog from his apartment in order "to satisfy East River's request to cure the situation."  *Id.*  Olive Oil was gone by the end of February.  *Id.* ¶ 78.

However, on February 16, 2012, Gilbert filed a complaint with HUD alleging that East River had refused to grant him a reasonable accommodation to his disability.  *Id.* ¶ 77.  HUD referred his complaint to DHR, which commenced an investigation.  *Id.*  Dr. Gordon thereafter submitted a letter to DHR, stating that "[n]o drugs or medical procedures can adequately replace the psychological and health benefits provided by a dog" and that "[Gilbert's] dog would be an irreplaceable adjunct to medicinal and talk therapy."  *Id.*

After Gilbert removed the dog from his apartment, East River informed him that it would discontinue its eviction proceeding against him but would still seek attorney's fees in the Housing Court action unless Gilbert withdrew his DHR complaint.  *Id.* ¶ 79.  On July 11, 2012, Gilbert moved for summary judgment dismissing the Holdover Petition in Housing Court.  *Id.*  The Housing Court granted Gilbert's motion based on the fact that he had removed Olive Oil from his apartment but stated that the Holdover Petition would be dismissed "without prejudice to either side's claim for legal fees."  *Id.*

On July 26, 2012, DHR issued a determination finding probable cause to believe East River had violated Gilbert's rights and referring the matter for a public hearing on November 26 and 27, 2012.  *Id.* ¶ 80.  On November 13, 2012, East River subpoenaed Dr. Gordon to testify at that hearing and to produce documents related to Gilbert's need for an emotional support animal.  *Id.* ¶ 81.  Dr. Gordon thereafter "withdrew as Gilbert's treating psychiatrist and from any involvement with his complaint," which Gilbert consequently retracted.  *Id.*

Gilbert submitted a second reasonable accommodation request on January 23, 2013, supported by reports from psychologists Lauren Barnett and Frederick Wooverton and

psychotherapist Ruth Helfrich.  *Id.* ¶ 82.  Two days later, on January 25, 2013, East River moved

to restore its eviction proceeding to the Housing Court calendar, seeking an award of attorney's

fees.  *Id.* ¶ 83.  On February 14, 2013, East River moved for an order deeming it to be the

prevailing party in the Housing Court proceeding and for an award of legal fees, which the

Housing Court granted on April 25, 2013.  *Id.*  In an order dated December 30, 2013, the

Housing Court granted East River $30,087.29 in legal fees for its case against Gilbert.  *Id.*

Meanwhile, on February 12, 2013, East River informed Gilbert that it had received his

second reasonable accommodation request but could not make a determination without

additional information and documentation, including "information about the credentials of

Gilbert's doctors, a list of Gilbert's disability-related medications, sworn affidavits from mental

health professionals providing detailed information about their treatment of Gilbert, and HIPAA

authorizations for the release of Gilbert's mental health records."  *Id.* ¶ 84.  On May 22, 2013,

East River denied Gilbert's reasonable accommodation request on the grounds that "a dog was

not needed for Gilbert to 'use and enjoy' his apartment."  *Id.* ¶ 85.  The letter also referenced

Gilbert's DHR complaint and stated, "Between the Housing Court Proceeding and the [DHR]

case, the coop has incurred approximately $100,000 in legal fees," adding that "under the terms

of the proprietary lease, all of the legal fees incurred by the coop in connection with [Gilbert's

fair housing] complaint are billable, and payable, as 'additional rent.'"  *Id.*

Gilbert filed a second HUD complaint on May 30, 2013, claiming that East River had

discriminated against him on the basis of disability and interfered with his exercise of rights

under the FHA by "among other things, insisting that he produce unnecessary, excessive, and

intrusive information" to support his claim.  *Id.* ¶ 27.  HUD investigated his complaint and

determined that reasonable cause existed to believe that East River had discriminated against

Gilbert and violated the FHA.  *Id.* ¶¶ 28-29.  On December 19, 2013, HUD issued a charge of

discrimination against East River, which East River elected to have resolved in a federal civil

action, pursuant to 42 U.S.C. § 3612(a).  *Id.* ¶¶ 30-31.

### D.  The Instant Action

The Government filed its initial Complaint in this case on December 5, 2013, alleging

that East River had discriminated against Stephanie Aaron by failing to make a reasonable

accommodation to her disability.  Doc. 1.  On January 17, 2014, the Government filed an

Amended Complaint, adding claims alleging that East River had discriminated against Eisenberg

and Gilbert, retaliated against Gilbert, and violated § 3614 by engaging in a pattern or practice of

discrimination or denying rights to a group of persons.  Am. Compl. ¶¶ 86-97.  This Court has

jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 3612(o) and 3614(a).  *Id.*

¶¶ 4-5.

Three motions are presently before the Court:  the Government's motion to strike

Defendant's Second Affirmative Defense pursuant to Rule 12(f) of the Federal Rules of Civil

Procedure (Doc. 22);[10] Defendant's motion for partial summary judgment with regard to the

Aaron claims pursuant to Rule 56 of the Federal Rules of Civil Procedure and motion to sever

the Government's remaining causes of action, those pertaining to Gilbert and Eisenberg,

pursuant to Rules 21 and 42(b) (Doc. 27); and Defendant's motion to dismiss the Government's

Fifth Cause of Action pursuant to Rules 12(b)(6) or 12(c) of the Federal Rules of Civil

Procedure, or alternatively for partial summary judgment pursuant to Rule 56 (Doc. 30).

---

[10] On April 7, 2014, Defendant filed an Answer to the Government's Amended Complaint that included eleven affirmative defenses.  Doc. 8 ("Answer") ¶¶ 101-49.  The Government moved to strike two of these, the Second and Eleventh Affirmative Defenses, on June 27, 2014.  Doc. 22.  East River voluntarily dismissed the Eleventh Affirmative Defense on August 26, 2014, rendering moot that portion of the Government's motion.  Doc. 22; Doc. 38; Doc. 39 n. 1.

**II. The Government's Motion to Strike Defendant's Second Affirmative Defense**

    **A. Legal Standard**

      "An affirmative defense is an 'assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true.'" *Tradewinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901 (JFK), 2013 WL 6669422, at *2 (S.D.N.Y. Dec. 17, 2013) (quoting BLACK'S LAW DICTIONARY 482 (9th ed. 2009)).  Although a court may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," FED. R. CIV. P. 12(f), "courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir. 1976).  Motions to strike an affirmative defense are generally disfavored, *County Vanlines Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 152 (S.D.N.Y. 2002), and "will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984) (internal citation and quotation marks omitted), *vacated and remanded on other grounds*, 478 U.S. 1015 (1986).

      To prevail on a motion to strike, the moving party must satisfy a stringent three-pronged test:  "(1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 111 (S.D.N.Y. 2005).  In considering the first and second prongs, courts apply the same legal standard as that applicable to a motion to dismiss under Rule 12(b)(6). *Coach, Inc. v. Kmart Corporations*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010).  The "sufficiency of a defense is to be determined solely upon the face of the pleading," and the court

"accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the [non-moving party's] favor." *Id.* (internal citations and quotation marks omitted).  In evaluating the third prong, the Court may consider whether inclusion of the legally insufficient defense would needlessly increase the "time and expense of trial" or "duration and expense of litigation." *Id.* at 426 (citing *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 272 (S.D.N.Y. 1999)); *see also S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999) ("An increase in the time, expense and complexity of a trial may constitute sufficient prejudice to warrant granting a plaintiff's motion to strike.").

### B.  Discussion

In its Second Affirmative Defense, East River claims that this action was "improperly commenced" because HUD departed from its own guidelines while investigating the allegations underlying this action.  Answer ¶¶ 103-11.  As a result, Defendant claims, "the investigation conducted and completed by HUD violated the Defendant's procedural and substantive due process rights," and "a predicate to the commencement of this action, to wit, a proper determination by HUD, is absent from this case."  *Id.* ¶¶ 109-110.  East River contends that these violations pose a complete defense to the Government's complaint because it is possible that, had HUD afforded East River the process to which it was entitled, "no charges of discrimination may have resulted."  Def.'s Opp'n to Pl.'s Mot. to Strike at 6 (Doc. 39).

East River's specific grievance is that HUD violated Chapters 7-5(F), 7-5(G), 7-5(J),[11] and 7-6(B)[12] of its Title VIII Intake, Investigation, and Conciliation Handbook (the "Title VIII Handbook") by failing to speak with a representative of East River before making a determination about the complaints against it, and by failing to afford East River an opportunity to address evidence and statements obtained in connection with the investigation.  Answer ¶¶ 105-07; *see* U.S. DEP'T OF HOUS. & URBAN DEV., TITLE VIII COMPLAINT, INTAKE, INVESTIGATION, AND CONCILIATION HANDBOOK (8024.01, REV-2) § 7-5 (May 11, 2005), *available at* http://portal.hud.gov/hudportal/HUD?src=/program_offices/administration/hudclips/handbooks/fheo/80241 (last visited Feb. 17, 2015) (hereinafter "TITLE VIII HANDBOOK").

In its motion to strike, the Government asserts that East River's Second Affirmative Defense is legally and factually insufficient and that its inclusion would be prejudicial.  The Government argues that East River's claim regarding a "predicate to the commencement of this action" can only be construed as a challenge to the Court's subject matter jurisdiction and that, to the extent that East River challenges the particulars of HUD's investigation, that challenge is

---

[11] Chapter Seven of the Title VIII Handbook contains information on planning and conducting investigations of complaints filed under the FHA.  Chapter 7-5 describes the "basic approach in most [Title VIII] investigations." *Id.* It begins, "Investigations follow a series of steps that are designed to culminate in a recommendation of reasonable cause or no reasonable cause.  However the sequence of the steps may vary depending on the individual case." *Id.* 7-5.  East River asserts that HUD's investigators omitted two of the steps described in Chapter 7-5 by failing to interview representatives of East River or to conduct an on-site or off-site investigation.  Answer ¶¶ 105-06. Subsection 7-5(F), the "respondent interview," states:  "The investigator seeks statements, witnesses and documents, and obtains other evidence relevant to the allegations of the complaint from the respondent that responds to each of the complainant's allegations, and solicits explanations and corroborative information for each defense."  TITLE VIII HANDBOOK 7-5.  Subsection 7-5(G), "On-Site or Off-Site Investigation," states:  "The investigator physically examines records and other documents relevant to the case, on-site or off-site, and interviews the parties and witnesses." *Id.*  Although Defendant also alleges that HUD violated a Chapter 7-5(J), there is no subsection (J) in Chapter 7-5. *Id.*

[12] Defendant also claims that HUD violated Subsection 7-6(B)—which is titled "Organization and Headings of the Investigation Plan" and describes the elements of a FHA investigation plan—by "failing to investigate all of the facts supporting each of East River's defenses to the three discrimination complaints."  Doc. 39 at 8; TITLE VIII HANDBOOK 7-6.

improper under the Administrative Procedure Act ("APA").  Gov't's Mem. Law in Supp. Mot. to

Strike at 5, 11 (Doc. 23).  East River, however, states that the defense "does not involve the

Court's subject matter jurisdiction," which East River concedes is not in issue, and rather "goes

to the very core of Plaintiff's case:  whether there was a proper basis for HUD's issuance of the

charges of discrimination."  Doc. 39 at 2.

### i.  "Predicate to the Commencement of This Action"

East River argues that, as a result of HUD's alleged departure from the procedures

described in Subsections 7-5 and 7-6 of the Title VIII Handbook, a proper "predicate to the

commencement of this action" is absent.[13]  Answer ¶ 110.  This argument fails.

First, it is well established that HUD handbooks do not consist of binding regulations.

Rather, "the various 'handbooks' and 'booklets' issued by HUD contain mere 'instructions,'

'technical suggestions,' and 'items for consideration.'"  *Thorpe v. Hous. Auth. of City of Durham*,

393 U.S. 268, 275 (1969) (comparing non-binding HUD publications with binding HUD

manuals).[14]  Particularly where, as here, the provisions of a handbook are not codified in the

---

[13] The parties have not made the Court aware of any other case in which the absence of a proper "predicate to the commencement" of an action was asserted as an affirmative defense.

[14] *See also Burroughs v. Hills*, 741 F.2d 1525, 1529 (7th Cir. 1984) (finding that a HUD handbook was "intended for internal use for the information and guidance of HUD officials," and was not "meant to be . . . an independent source of legal rights or claims against the United States Government and its officials"); *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 701 F.2d 112, 114 (10th Cir. 1983) (stating that procedures in HUD's "Administration of Insured Home Mortgages" Handbook were not "statutorily prescribed" and were "pertinent only to the question of capricious action amounting to abuse of discretion"); *Fairmount Heights Assocs., L.P. v. Greystone Servicing Corp.*, No. 3:06 Civ. 1206 (WWE), 2007 WL 2491907, at *3 (D. Conn. Aug. 29, 2007) ("It is well established that the HUD Handbook is advisory . . . ."); *Williams v. Hanover Hous. Auth.*, 871 F. Supp. 527, 532 (D. Mass. 1994) ("HUD's handbook provisions concerning the jurisdiction of public housing authorities are merely interpretive and, therefore, nonbinding."); *Harrison v. Hous. Auth. of City of Coll. Park*, 445 F. Supp. 356, 358 (N.D. Ga. 1978) *aff'd*, 592 F.2d 281 (5th Cir. 1979) (stating that the provisions in HUD's "Low Rent Housing Administration of Program Handbook" are not mandatory); *Bridgeport Towers, LLC v. Berrios*, 57 Conn. L. Rptr. 108, 2013 WL 6171376, at *1 (Conn. Super. Ct. Nov. 1, 2013) ("There is a strong majority of case law . . . nationally . . . which has held that administrative agency handbooks and manuals generally, and the HUD Handbooks specifically, are internal procedures and guidelines, serving at most an advisory role in judicial review.").

Federal Register, courts have interpreted them as providing guidance rather than binding obligations or legal duties.[15]

But even if the Title VIII Handbook *did* dictate compulsory responsibilities for HUD investigators, East River's allegations regarding the completeness and thoroughness of HUD's investigation could not defeat the Government's FHA claims in this case.  To the contrary, the alleged deficiencies in HUD's investigative process have no bearing on the legitimacy of this civil action commenced by the Department of Justice.  *See United States v. Lake Cnty. Bd. of Comm'rs*, No. 2:04 Civ. 415, 2006 WL 1660598, at *2 (N.D. Ind. June 7, 2006) ("The sufficiency, methodology, and appropriateness of the HUD investigation are not relevant to the plaintiff's claims under the FHA . . . ."); *cf. United States v. Hillman Hous. Corp.*, 212 F. Supp. 2d 252, 253 (S.D.N.Y. 2002) ("Nothing in [FHA] § 3612(*o*) remotely suggests that [subject matter] jurisdiction is contingent on HUD's compliance with the Act's . . . administrative procedural requirements.").  Tellingly, the Title VIII Handbook itself is "utterly silent regarding the Attorney General's authority to bring this suit."  Doc. 23 at 6.

In fact, the Department of Justice's independent pursuit of a prosecution under the FHA is not contingent on the filing or existence of a HUD complaint, let alone the procedural details of a HUD investigation.  Rather, the Attorney General may intervene in any civil action commenced by an aggrieved person if the case is of general public importance.  42 U.S.C §

---

[15] *See Feldman v. U.S. Dep't of Hous. & Urban Dev.*, 430 F. Supp. 1324, 1327 (E.D. Pa. 1977) (holding that HUD's "Loan Management Handbook," which was not published in the Federal Register, was not an "independent source of authority" for HUD procedures).  In its Opposition to Plaintiff's motion to strike, Defendant also argues that HUD violated 24 C.F.R. § 103.215, a provision not cited in its Answer and Affirmative Defenses.  Doc. 39 at 3, 7-8.  That provision states, "In conducting investigations under this part, the Assistant Secretary will seek the voluntary cooperation of all persons to obtain access to premises, records, documents, individuals, and other possible sources of information; to examine, record, and copy necessary materials; and to take and record testimony or statements of persons reasonably necessary for the furtherance of the investigation."  24 C.F.R. § 103.215.  Defendant states, without support, "Necessary persons unquestionably include the respondent to a discrimination complaint," and alleges, without any basis for this claim, that the Title VIII Handbook is "an official interpretation of 24 C.F.R. § 103.215."  Doc. 39 at 7.  *Burroughs*, which Defendant cites for this point, addresses neither this particular handbook nor this particular provision of the Federal Register.

3613(e).  Independent of any aggrieved person, the Attorney General may also file suit in any appropriate federal district court where there is reasonable cause to believe that a person or group of persons is engaged in a pattern of practice of resistance to the full enjoyment of rights granted by the FHA, or that a group of persons has been denied rights granted by the FHA and that such denial raises an issue of public importance, as the Government has alleged here.  *Id.* § 3614(a). Although, in this particular case, the Government filed suit after receiving a referral from HUD, it could have brought an action even in the absence any HUD investigation, involvement, or referral.

Similarly, although this particular action arises from complaints filed with HUD, "[u]pon an incident of unlawful housing discrimination in New York, there are several avenues under both federal and state law through which an aggrieved person may seek relief."  *Hous. Opportunities Made Equal, Inc. v. Diguilio*, No. 98 Civ. 629S, 2000 WL 1481016, at *3-4 (W.D.N.Y. Sept. 27, 2000) *aff'd* 20 F. App'x 67 (2d Cir. 2001).[16]  Notably, an "aggrieved

---

[16] The Court in *Hous. Opp. Made Equal*, summarized these avenues:

> First, under federal law, a private person may commence an administrative proceeding with [HUD], by filing an administrative complaint either directly with any of HUD's offices of Fair Housing and Equal Opportunity, or with any state or local agency certified by HUD to receive complaints.  42 U.S.C. § 3610(a); 24 C.F.R. § 103.30(a). If such an administrative complaint is filed directly with HUD, the complaint may then be referred by the HUD Secretary to a state or local public agency for determination, provided that such agency has been certified as being substantially the equivalent of HUD. 42 U.S.C. § 1310(f); 24 C.F.R. § 103.100(a).  Upon such a referral, the Assistant Secretary is required to notify the aggrieved person of her right to commence a civil action in federal district court under 42 U.S.C. § 3613.  24 C.F.R. § 103.100(b).  After filing an administrative charge under 42 U.S.C. § 3610, and provided the matter is not referred to a state or local public agency certified as being substantially the equivalent of HUD, the charge may be resolved either in a civil action under 42 U.S.C. § 3612(o), or in an administrative hearing under 42 U.S.C. § 3612(b).  42 U.S.C. § 3612(a).  An administrative hearing under 42 U.S.C. § 3612(b) would be held on the record before "an administrative law judge . . . ." 42 U.S.C. § 3612(b).  The civil action available under 42 U.S.C. § 3612(o) refers to an action commenced in federal district court within 30 days of the date the election to proceed by civil action is made under 42 U.S.C. § 3612(a).  42 U.S.C. § 3612(o).  A private person may also, under 42 U.S.C. § 3613, commence a civil action in federal district court as an aggrieved person, without first commencing any administrative action under either federal or state law.

2001 WL 1481016, at *3-4.

19

person" may sidestep HUD completely and simply file suit in federal district court, *id.* § 3613(a)(1)(A), and an aggrieved person who *has* filed a HUD complaint may commence a civil action even if that complaint results in an adverse finding. *See Ramos v. U.S. Dep't of Hous. & Urban Dev.*, No. 96 Civ. 5552 (MGC), 1997 WL 589008, at *3 (S.D.N.Y. Sept. 19, 1997) (holding that a HUD determination that there was no reasonable cause to believe a discriminatory housing practice had taken place could not preclude an aggrieved party's federal court civil suit) (citing 42 U.S.C. § 3613(a)(2)).

Correspondingly, to treat any purported errors in a HUD investigation as a complete defense to the Government's allegations of housing discrimination in a case stemming from HUD complaints filed by aggrieved individuals would be to punish those individuals for seeking HUD's assistance instead of pursuing independent legal actions. *See Hillman*, 212 F. Supp. 2d at 254-55 ("The purpose of the [FHA] is to provide relief to victims of housing discrimination. . . . To hold that complainants who seek administrative assistance risk delay or loss of judicial relief by reason of agency procedural errors would channel those who feel they were victims of discrimination away from the administrative process."); *see also E.E.O.C. v. Hibbing Taconite Co.*, 266 F.R.D. 260, 273 (D. Minn. 2009) (holding that a defendant's assertion that the Equal Employment Opportunity Commission (EEOC) improperly conducted an investigation, yielding "an unfair determination of reasonable cause" was insufficient as an affirmative defense and that "[w]hether the determination was made in error" was an issue that the EEOC would need to address at trial by "prov[ing] to a fact-finder that the discrimination alleged in fact occurred").[17]

---

[17] "Courts, including the Second Circuit, have consistently relied on Title VII cases in their analysis of housing discrimination under the FHA." *Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F. Supp. 2d 228, 234 n. 4 (E.D.N.Y. 2011)); *see also Tsombanidis v. W. Haven Fire Dep't,* 352 F.3d 565, 575 (2d Cir. 2003) ("When examining disparate impact claims under the [Fair Housing Act] . . ., we use Title VII as a starting point."); *Braunstein v. Dwelling Managers, Inc.,* 476 F.Supp. 1323, 1326–27 (S.D.N.Y.1979) (where discrimination claims under the Fair Housing Act raised issues of "first impression in defining the limits of sex discrimination under § 3604," the court looked to cases "construing similar language in Title VII").

It would be irrational to treat alleged missteps in a HUD investigation as complete defenses to a civil action in which a factfinder will duly consider the merits of the Government's claims.

### ii.  Due Process and the Administrative Procedure Act

East River also argues that, by "violati[ng]" the Title VIII Handbook, HUD infringed on East River's due process rights and that East River has been "substantially prejudiced" and deprived of "a full opportunity to respond to the charges against it."  Doc. 39 at 7, 16.   However, to the extent that East River seeks review of HUD's issuance of the charges of discrimination, this defense fails because the Administrative Procedure Act ("APA") does not permit interlocutory review of non-final agency actions.  Doc. 23 at 2.

Under the APA, only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.  East River claims that it is "indisputable that HUD's issuance of the charges of discrimination was its 'final agency action' within the meaning of the APA . . . ."  Doc. 39 at 2. However, according to the relevant case law, HUD's issuance of a charge of discrimination is not a "final agency action."  *See FTC v. Std. Oil Co. of Calif.*, 449 U.S. 232, 246 (1980) (Federal Trade Commission's issuance of a complaint stating reason to believe company had violated the Federal Trade Commission Act was not a final agency action); *Top Choice Distribs. v. U.S. Postal Serv.*, 138 F.3d 463, 467 (2d Cir. 1998) (U.S. Postal Service's issuance of an administrative complaint was not a final agency action and had "no effect except to force plaintiffs to respond, an effect that does not amount to a cognizable legal consequence").  Rather, a "final agency action" under the APA "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Bennett v. Spear*, 520 U.S. 154,

178 (1997) (quoting *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71 (1970)).

Additionally, HUD's alleged departure from its internal guidelines could not have violated East River's due process rights, because "an administrative investigation adjudicates no legal rights . . . ." *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984). Instead, the Supreme Court has held that "when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used." *Hannah v. Larche,* 363 U.S. 420, 442 (1960); *see also Concrete Pipe & Prods. of Calif., Inc. v. Constr. Laborers Pension Trust for S. Calif.*, 508 U.S. 602, 618 (1993) ("Where an initial determination is made by a party acting in an enforcement capacity, due process may be satisfied by providing for a neutral adjudicator to conduct a *de novo* review of all factual and legal issues.") (internal citations and quotation marks omitted).[18]  The charges of discrimination that HUD issued after investigating each of the three Complainants' cases merely stated that there was "reasonable cause" to believe East River violated the FHA, not that it definitely did so.

Following the issuance of a charge of discrimination by HUD, a respondent has the opportunity to defend itself in an adjudicatory proceeding before an administrative law judge or in federal district court. It is in those adjudicatory proceedings that a respondent's due process

---

[18] East River argues that *S.E.C. v. O'Brien*, 467 U.S. at 735, and *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S at 602, "have no similarity to the instant action whatsoever." Doc. 39 at 10. It is true that the facts of these cases do not mirror those of the instant action, but the legal tenet of both—that due process is not violated in an initial agency determination where factual and legal issues are later subject to review in court—is perfectly on point. At the same time, the Sixth Circuit cases cited in support of Defendant's due process argument are inapt. *See Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054 (6th Cir. 1983) (reviewing decision by the Federal Employee Appeals Authority to terminate a doctor's civilian employment with the United States Army); *Baumgardner v. Sec'y, U.S. Dep't of Hous. & Urban Dev. on Behalf of Holley*, 960 F.2d 572 (6th Cir. 1992) (reviewing a HUD Administrative Law Judge's determination that a landlord was guilty of intentional discrimination). Those cases contemplate the process afforded in the course of final agency determinations that resulted in adverse findings for the individuals in question: the loss of a job in *Connor*, and $9000 in damages and penalties in *Baumgardner*. *Connor*, 721 F.2d at 1054; *Baumgardner*, 960 F.2d at 572.

rights are at stake.  *See S.E.C. v. Rivlin*, No. 99-1455 (RCL), 1999 WL 1455758, at *3 (D.D.C. Dec. 20, 1999) (holding that because an SEC investigation "clearly does not lead to an adjudication, but rather the filing of a[] complaint so that the court can adjudicate the matter . . . , defendant is afforded due process rights through the adjudication before [the] court, and not during the investigation prior to the filing of the civil complaint").  Having elected to proceed in this Court, East River may respond to the Government's allegations in the course of this action and has not been prejudiced barring a final determination on the merits.  Am. Compl. at ¶¶ 21, 26, 31.  Stated simply, this action is the due process to which Defendant is entitled.

### iii. East River's Second Affirmative Defense is so Insufficient as to Satisfy the Prerequisites of a Motion to Strike

In light of the above, there are no questions of fact or law that might allow the Second Affirmative Defense to succeed.  The Title VIII Handbook imposes no binding obligations on HUD, but even if it did, HUD's compliance with provisions of the Title VIII Handbook would be irrelevant to the merits of the Government's claims against East River.  To the extent that Defendant alleges a due process violation, it cannot succeed because HUD's investigation and issuance of a charge of discrimination were not final agency actions that adjudicated East River's legal rights.

Finally, to permit discovery into the propriety of the HUD investigation and to allow the actions of HUD's investigators to be explored and criticized at trial would waste valuable time and resources in the course of this litigation, unnecessarily complicate the issues at stake in this case, and distract a jury.  As the Government argues, "If East River were allowed to proceed with discovery on the defense[], everyone connected with the HUD investigation would be a witness, expanding the documents and witnesses involved in the case, which would in turn mean greater time and expense and a greater need for Court intervention with respect to discovery issues."

Doc. 23 at 13.  East River's Second Affirmative Defense is so insufficient as to meet the high bar

on a motion to strike.  Consequently, the Government's motion to strike Defendant's Second

Affirmative Defense is hereby GRANTED.

## III. Defendant's Motion for Partial Summary Judgment and to Sever the Complaint[19]

### A. Legal Standard[20]

Summary judgment is only appropriate where the "materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory answers, [and]

other materials" show "that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), 56(c).  "An issue of fact is

'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving

party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011)

---

[19] The Government contends that East River violated Federal Rule of Civil Procedure 56(c)(4) by submitting a Certification from an attorney for East River, Bradley S. Silverbush ("Silverbush") (Doc. 28) that is "rife with legal argument, conclusory assertions, and statements regarding matters on which the certification does not demonstrate Silverbush would be competent to testify" and  urges the Court to "strike or disregard" such material.  Doc. 40 at 6-7 (citing *Genometrica Research Inc. v. Gorbovitski*, No. 11 Civ. 05802 (ADS) (AKT), 2013 WL 394892, at *4 (E.D.N.Y. Jan. 31, 2013)).  The Government further argues that the Certification contains statements not "relevant to the instant motion for partial summary judgment on the basis of *res judicata* or collateral estoppel" and asks the Court to disregard statements besides those regarding the substance of the Aaron claims and the history of DHR's investigation of her complaint and related proceedings.  *Id.*  Finally, the Government argues that East River's "Statement of Material Facts" contains immaterial and improper material in violation of Local Civil Rules 56.1(a) and (d).  *Id.* at 8.  In evaluating Defendant's motion, the Court considers only those facts that the Court deems relevant and proper.

Additionally, the Court notes that Defense counsel has failed to abide by the Court's Individual Practices, which limit opening memoranda of law to 25 pages, by submitting a 22-page "Certification" by counsel along with a 19-page memorandum of law.  *See* Individual Practices of Judge Edgardo Ramos § 2.B.i.  The Court will excuse this failure in the interest of deciding the matter on the merits but expects Defense counsel to comply with the Court's Individual Practices in the future.

[20] East River frames its motion, "[U]pon granting partial summary judgment with respect to the Aaron claims, the Amended Complaint's causes of action with respect to the remaining underlying complaints should be severed."  Doc. 29 at 17.  Because the Court denies Defendant's motion for summary judgment with respect to the Aaron claims, *see infra* Part III.B, as well as Defendant's separate motion to dismiss and/or for summary judgment on the Government's "pattern or practice" claim," *see infra* Part IV, it is not necessary to state the legal standards for a motion to sever pursuant to Federal Rules 21 and/or 42(b).

(citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal citation and quotation marks omitted).  In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  To prevail, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986)).

"[S]ummary judgment should only be granted '[i]f *after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'"  *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (quoting *Berger v. United States,* 87 F.3d 60, 65 (2d Cir.1996)).  Timing is key:  "The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment," and "[o]nly in the rarest of cases may

summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Id.* (internal quotation marks and citations omitted). "Accordingly, '[t]he burden on the moving party is greater in cases where discovery is incomplete.'" *Indergit v. Rite Aid Corp.*, No. 08 Civ. 11364 (PGG), 2010 WL 1327242, at *3 (S.D.N.Y. Mar. 31, 2010) (quoting *Saffire Corp. v. Newkidco., LLC,* 286 F.Supp.2d 302, 306 (S.D.N.Y.2003)).

### B.  Discussion

In its motion for partial summary judgment, East River argues that the Aaron claims are precluded, under the doctrines of *res judicata* and collateral estoppel, and under New York Executive Law § 300, by (1) DHR's initial no probable cause determination in its investigation of Aaron's complaint and (2) the Appellate Division holding, in East River's Article 78 proceeding, that DHR acted improperly when it reopened its file on Aaron after that initial determination.  Doc. 29.[21]  This argument fails.

Pursuant to the Full Faith and Credit statute, 28 U.S.C. § 1738, federal courts are required "to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged."  *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982).  This principle includes no exception for state court decisions "upholding a state administrative agency's rejection of [a] . . . discrimination claim as meritless when the state court's decision would be *res judicata* in the state's own courts."  *Id.* at 463. Therefore, where a New York state court affirms a DHR no probable cause finding, § 1738 precludes federal litigation based on those facts determined by DHR, "provided that the procedures followed in coming to that determination satisfied the minimum constitutional

---

[21] Although courts disfavor summary judgment motions made prior to the completion of discovery, Defendant's motion for partial summary judgment with regard to complainant Stephanie Aaron rests entirely on the procedural and legal bases of this action rather than on any material likely to emerge in discovery.  The Government does not argue otherwise.

requirements of the Due Process Clause." *Yan Yam Koo v. Dep't of Buildings of City of New York*, 218 F. App'x 97, 98 (2d Cir. 2007) (summary order) (citing *Kremer*, 456 U.S. at 481-82).

Section 1738, however, does not apply to *unreviewed* state agency determinations. *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 794 (1986). Nevertheless, such determinations are frequently granted preclusive effect under federal common law. *Id.* at 797-99. Specifically, unless Congress has expressed an intention to the contrary, "when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' . . . federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Id.* at 799 (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966).

In New York, "the doctrines of *res judicata* and collateral estoppel are applicable to give conclusive effect to the quasi-judicial determinations of administrative agencies . . . when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law." *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 499, 467 N.E.2d 487 (1984) (internal quotation marks and citations omitted). Within this framework, "federal courts in New York have undertaken the somewhat awkward task of anticipating what preclusive effect New York courts would afford [a DHR] decision." *Vargas v. City of New York*, No. 01 Civ. 7093 (LAP), 2008 WL 361090, at *4 (S.D.N.Y. Feb. 7, 2008) (comparing *Kosakow v. New Rochelle Radiology Assocs.,* 274 F.3d 706 (2d Cir. 2001), *with DeCintio v. Westchester Cnty. Med. Ctr.,* 821 F.2d 111 (2d Cir. 1987), and *Kirkland v. City of Peekskill*, 828 F.2d 104 (2d Cir. 1987)). At the heart of this inquiry is whether the administrative agency determination meets the requirements for *res judicata* and collateral estoppel under New York law. *See Josey v. Goord*, 9 N.Y.3d 386, 389-90, 880 N.E.2d

27

18, 20 (2007) (*res judicata*); *Staatsburg Water Co. v. Staatsburg Fire Dist.*, 72 N.Y.2d 147, 153, 527 N.E.2d 754 (1988) (collateral estoppel).

*Res judicata* "precludes a party from litigating a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." *Josey*, 9 N.Y.3d at 389-90, 880 N.E.2d 18 (internal quotation marks and citation omitted).  Under New York's "transactional approach" to the doctrine of *res judicata*, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."  *O'Brien v City of Syracuse*, 54 N.Y.2d 353, 357, 429 N.E.2d 1158, 445 N.Y.S.2d 687 (1981).  Therefore, *res judicata* "bars successive litigation based upon the same transaction or series of connected transactions . . . if:  (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was."  *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122, 894 N.E.2d 1 (2008) (internal quotation marks and citations omitted).

"Collateral estoppel is a narrower species of *res judicata* . . . that holds that, as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive on the issues of fact and questions of law necessarily decided therein in any subsequent action."  *Vargas*, 2008 WL 361090, at *4 (internal quotation marks, citations, and alterations omitted).   "Whether the prior adjudication occurred in the context of an administrative determination . . . or a full-fledged judicial proceeding," collateral estoppel is applicable only if (1) "there is an identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and (2) the party or one in privity had "a full and fair opportunity to contest the decision now said to be controlling."  *Staatsburg*, 72

N.Y.2d at 153, 527 N.E.2d 754 (internal quotation marks and citation omitted).  "The litigant

seeking the benefit of collateral estoppel must demonstrate that the decisive issue was

necessarily decided in the prior action against a party, or one in privity with a party. . . . The

party to be precluded from relitigating the issue bears the burden of demonstrating the absence of

a full and fair opportunity to contest the prior determination."  *Buechel v. Bain*, 97 N.Y.2d 295,

303-04, 766 N.E.2d 914 (2001).

Both *res judicata* and collateral estoppel are "flexible doctrine[s]," not to be

"mechanically applied" merely because some of the "formal prerequisites" for application are

present.  *See People v. Roselle,* 84 N.Y.2d 350, 357, 618 N.Y.S.2d 753, 643 N.E.2d 72 (1994).

Courts will only "apply *res judicata* to an administrative decision . . . [if] to do so would be

consistent with the function of the administrative agency involved, the peculiar necessities of the

particular case, and the nature of the precise power being exercised."  *Josey*, 9 N.Y.3d at 389-90,

880 N.E.2d 18 (internal quotation marks and citations omitted).  For collateral estoppel, "the

fundamental inquiry is whether relitigation should be permitted in a particular case in light of . . .

fairness to the parties, conservation of the resources of the court and the litigants, and the societal

interests in consistent and accurate results.  No rigid rules are possible, because even these

factors may vary in relative importance depending on the nature of the proceedings." *Staatsburg,*

72 N.Y.2d at 153 (citations omitted); *see also Buechel*, 97 N.Y.2d at 304, 740 N.Y.S.2d at 257,

766 N.E.2d at 919 ("The equitable doctrine of collateral estoppel is grounded in the facts and

realities of a particular litigation, rather than rigid rules.").

### i.  The Appellate Division's Article 78 Decision is Not Entitled to Preclusive Effect Under New York Executive Law § 300, *Res Judicata*, or Collateral Estoppel

Under § 1738, once a state court has "reviewed and affirmed [a DHR] finding of no

probable cause," preclusive effect will attach so long as the DHR and judicial proceedings

29

provided the aggrieved party with due process.  *Yan Yam Koo*, 218 F. App'x at 99; *see also*

*Kremer*, 456 U.S. 482-83.  State court review of a DHR determination also bars relitigation

pursuant to New York Executive Law § 300, which provides that "the final determination of a

discrimination case decided by [DHR] and reviewed by the state court 'shall exclude any other

action, civil or criminal, based on the same grievance of the individual concerned.'"  *Kendall v.*

*Avon Products, Inc.*, 711 F. Supp. 1178, 1181 (S.D.N.Y. 1989) (citing N.Y. EXEC. LAW § 300).

East River argues that the Government is precluded from bringing the Aaron claims under both

28 U.S.C. § 1738 and § 300 of the Executive Law by the State Appellate Division decision in the

Article 78 proceeding that East River itself commenced against DHR.  Doc. 29 at 4-6, 8-17.

However, contrary to Defendant's arguments, the Appellative Division's Article 78

decision does not constitute judicial review of DHR's determination regarding Aaron and,

consequently, has no preclusive effect in this case.  In its concise opinion, the Appellative

Division held only that it was improper of DHR to dismiss Aaron's complaint for "administrative

convenience" after issuing a finding of no probable cause and closing Aaron's file on that basis.

Doc. 28, Ex. BB.  The Appellate Division did not engage with the merits of DHR's initial no

probable cause finding.  *See Wrenn v. Verizon*, 965 N.Y.S.2d 362, 363 (N.Y. App. Div. 2d Dep't

2013) (distinguishing "administrative convenience" from dismissal on the merits).

Although Defendant repeatedly attempts, in its submissions to this Court, to categorize

the Appellate Division decision as one on the merits of Aaron's claims, Defendant's efforts are

unavailing.[22]  The Appellate Division decision, issued after the commencement of this action,

_____

[22] *See, e.g.*, Def.'s Mem. Law Supp. Mot. for Partial Summ. J. (Doc. 29) at 4 (arguing that § 300 prohibits the
Government from pursuing a discrimination claim "that has been decided by DHR and reviewed by a New York
State Court"); *id.* at 6 (declaring the Appellate Division Order a "final determination of the Amended Complaint's
claims with respect to Aaron"); *id.* at 12 ("Plaintiff is also in privity with DHR so as to make the Appellate Division
Order's reinstatement of the Dismissal Order binding on Plaintiff.").

addressed DHR's administrative practices and procedures rather than any allegations of discrimination on the part of East River.   It states that DHR's decision to dismiss Aaron's complaint on the basis of administrative convenience "was made after DHR completed its investigation of the complaint, made factual findings, and dismissed the complaint upon a finding that there was no probable cause to believe that East River had engaged in the complained of discriminatory conduct."  Doc. 28, Ex. BB at 46.  Yet it says nothing regarding the soundness of DHR's initial investigation, the appropriateness of its findings, or the merits of its no probable cause determination.  In its decision, the Appellate Division evaluated only DHR's conduct, not East River's.  The parties to that proceeding were East River and DHR, not Aaron, nor was Aaron in privity with either party in that proceeding.  Unlike the cases cited by East River in support of its argument in favor of preclusion, no state court weighed in on the legal merit of Aaron's complaint or DHR's legal finding.  *See, e.g.*, *Mitchell v. Nat'l Broad. Co.*, 553 F.2d 265, 276 (2d Cir. 1977) ("[I]n this case, five judges of New York State's second highest court reviewed the agency's legal finding.").   Consequently, neither *res judicata* nor collateral estoppel applies to that decision.

For the same reasons, New York Executive Law § 300 does not bar the Government from pursuing the Aaron claims.  Def.'s Mem. Law Supp. Mot. for Partial Summ. J. at 3 (Doc. 29). Defendant argues that § 300 "unambiguously prohibits <u>any</u> person or entity, including the United States of America, from pursuing a claim and/or action relating to a claim of discrimination that has been decided by DHR and reviewed by a New York State Court" and that the provision is an "absolute bar" on the Government's claims regarding Stephanie Aaron.  Doc. 28 at ¶¶ 87-90 (emphasis in original).  Defendant's interpretation of § 300 is overbroad, and Defendant's description of the Appellate Division decision is inaccurate.

In fact, § 300 is an "election of remedies" provision pursuant to which a "plaintiff must choose one forum to the exclusion of the other."  *See Bishop v. Henry Modell & Co.*, No. 08 Civ. 7541 (NRB), 2009 WL 3762119, at *7 (S.D.N.Y. Nov. 10, 2009), *aff'd sub nom. Bishop v. Henry Modell & Co.*, 422 F. App'x 3 (2d Cir. 2011).  It does not bar the Government's action for two reasons:  (1) Section 300 applies only to aggrieved parties, and (2) it applies only to aggrieved parties who have sought judicial review of an agency determination.  *See Rio v. Presbyterian Hosp. in City of New York*, 561 F. Supp. 325, 327 (S.D.N.Y. 1983) (citing N.Y. EXEC. LAW §§ 297(9), 300); *Jainchill v. New York State Human Rights Appeal Bd.*, 83 A.D.2d 665, 442 N.Y.S.2d 595 (App. Div. 1981) ("A permanent barrier to the filing of a complaint would have arisen only if petitioner had commenced a proceeding for judicial review of the final administrative determination . . . .") (citing N.Y. EXEC. LAW §§ 297(9), 300).  Had Aaron pursued judicial review of the merits of DHR's initial no probable cause determination and *then* filed suit in this Court, § 300 might have precluded her ability to seek relief.  However, Aaron sought no such review, and Aaron is not the plaintiff in this action.[23]

Accordingly, the Appellate Division decision in East River's Article 78 proceeding is entitled to no preclusive effect in this action, either under 28 U.S.C. § 1738 or New York Executive Law § 300.

---

[23] East River nonsensically argues, "Aaron had the opportunity to challenge DHR's finding of no probable cause in New York State Supreme Court both before the case was reopened, and after the Appellate Division Order reinstated the Dismissal Order, but failed to do so and the time to do so expired.  Thus, the proceedings afforded Aaron a full and fair opportunity [to] litigate her claims of discrimination."  Doc. 29 at 16.  Is it unsurprising that Aaron did not seek judicial review of DHR's initial no probable cause finding given that her complaint was promptly reopened, approximately two weeks after the finding was issued, and that her claims are being litigated in this Court.  Moreover, if the Appellate Division decision is, as Defendant argues, a decision on the merits, Aaron would be precluded from challenging DHR's no probable cause finding after that decision was issued.

### ii.  The Preclusive Effect of Unreviewed State Agency Findings Under the FHA

Defendant also argues that the Government's claims regarding Stephanie Aaron are precluded by DHR's initial no probable cause determination, which, as this Court has found, has not been reviewed by any court.  As stated above, the general rule, set forth by the Supreme Court in *University of Tennessee v. Elliott*, is that "when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, . . . federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."  478 U.S. at 799 (internal quotation marks omitted).

However, "[t]here are . . . exceptions to this broadly stated rule."  *Sikri v. Gilmore*, No. 97 Civ. 2367 (BSJ), 1999 WL 156385, at *2 (S.D.N.Y. Mar. 23, 1999).  For example, the Supreme Court has held that Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act (ADEA) both "evidence Congress' intent to provide plaintiffs with a trial de novo in the federal courts, abrogating the common law rule that collateral estoppel applies to state administrative agencies' 'judicial' determinations."  *Id.* (citing *Elliott*, 478 U.S. at 799); *see also Astoria Fed. Sav. & Loan v. Solimino*, 501 U.S. 104 (1991) (unreviewed findings of state agencies have no preclusive effect on federal proceedings under the ADEA); *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 827-28 (6th Cir. 2013) ("[U]sing *Elliott* and *Solimino* as a guide, we find that common law collateral estoppel principles do not apply to claims brought under the ADA because Congress has demonstrated its intent that unreviewed state administrative findings not have preclusive effect in this statutory context."); *Joseph v. Athanasopoulos,* 648 F.3d 58, 64 n. 6 (2d Cir. 2011) (explaining that "no distinction" exists between the ADA and Title VII to justify a different outcome regarding preclusion).

Accordingly, where the language of a statute "would make little sense . . . if state agency findings were entitled to preclusive effect . . . in federal court," no such preclusive effect should be granted. *Elliott*, 478 U.S. at 795 (citing *Kremer,* 456 U.S. at 470 n. 7). However, where a statutory scheme indicates no intent to abrogate common law principles of preclusion, the unreviewed findings of state administrative agencies may preclude litigation in federal court. *See id.* at 796-97 (holding that, unlike Title VII, § 1983 indicated no congressional intent "to contravene the common-law rules of preclusion") (citing *Allen v. McCurry*, 449 U.S. 90, 97-98 (1980)); *Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.*, 159 F.3d 129, 135 (3d Cir. 1998) ("Unlike [*Solimino*] or *Elliott,* we find no provision of [the Public Utility Regulatory Policies Act] that seeks to limit common law rules of preclusion from applying to state agency decisions relating to utility regulation.").

The "threshold question," therefore, with regard to East River's assertion that the Aaron claims are precluded by DHR's initial no probable cause finding, is whether, in enacting the FHA, "Congress expressly or implicitly limited the preclusive effect to be given to the determinations of state administrative agencies." *Kosakow*, 274 F.3d at 728 (considering the preclusive effect of a DHR determination on a subsequent federal action under the Family and Medical Leave Act); *see also Solimino*, 501 U.S. at 108 ("[T]he question is not whether administrative estoppel is wise but whether it is intended by the legislature."); *Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003) ("Even if state courts apply *res judicata* to state administrative decisions, federal courts will only follow suit if doing so is consistent with Congress' intent in enacting the federal statute at issue. . . . This means that when the preclusive effect of a state administrative decision is in question, the central inquiry is one of federal statutory interpretation.").

In this case, the Government contends that DHR's initial no probable cause determination cannot preclude its claims because "the FHA anticipates that an adverse state administrative disposition that occurs . . . pursuant to a referral under § 3610(f), will not preclude a trial *de novo* on an aggrieved person's claim of discrimination." Doc. 40 at 11.  Neither the Supreme Court, the Second Circuit, nor any other Court of Appeals has addressed this precise question.  Several district courts, however, both within this district and elsewhere, have considered the issue.

The apparent first, in 1992, was a court in this district.  In *Ward v. Harte*, the court held that the FHA did not express congressional intent to abrogate common law principles of preclusion and, therefore, FHA claims in federal court *could* be precluded by unreviewed state agency determinations in "appropriate" cases.  794 F. Supp. 109, 113 (S.D.N.Y. 1992).  The court articulated three justifications for its conclusion:

> First, the enforcement structure of the Fair Housing Act is significantly different from that of either Title VII or the ADEA: a plaintiff need not pursue any administrative remedies at all before filing a suit under the FHA, 42 U.S.C. § 3613(a)(1)[24]. . . . Second, the administrative enforcement mechanism which does exist expressly contemplates that the Secretary of Housing and Urban Development defer to the dispute resolution procedures employed by state or local authorities, so long as those authorities meet certain conditions.  42 U.S.C. § 3610(f) . . . .  Third, Congress, in the 1988 amendments to the FHA, specifically provided that with respect to one type of claim—non-compliance with the statutory mandate to make premises more accessible to handicapped persons—determinations of state and local bodies are *not* conclusive. 42 U.S.C. § 3604(f)(6)(B). . . . Applying the maxim *expressio unius est exclusio alterius,* and since these amendments were enacted after *Elliott,* this subsection lends support to the view that Congress did not intend to deny preclusion to other determinations of state and local bodies in appropriate circumstances.

*Id.* at 113-14.  Following *Ward*, several other district courts adopted this reasoning without further elaboration.  *See United States v. Town of Garner, N. Carolina*, 720 F. Supp. 2d 721, 730

---

[24] The FHA's lack of exhaustion requirements distinguishes it from the Age Discrimination in Employment Act (ADEA).  The Supreme Court has held that the ADEA's exhaustion requirements "plainly assume the possibility of federal consideration after state agencies have finished theirs."  *Solimino*, 501 U.S. 104, 111 (1991).

n. 3 (E.D.N.C. 2010); *Johnson v. GSM Mgmt. Co.*, No. 5:04 Civ. 01684, 2006 WL 2813379, at

*6 (N.D. Ohio Sept. 28, 2006); *Young v. Marine Drive Apartments, Inc.*, No. 03 Civ. 0498E

(SR), 2004 WL 1752598, at *3 (W.D.N.Y. Aug. 4, 2004); *Sikri*, 1999 WL 156385, at *2; *Sokoya

v. 4343 Clarendon Condo Ass'n*, No. 96 Civ. 5278, 1996 WL 699634, at *4-5 (N.D. Ill. Nov. 27,

1996).

 Only one district court has affirmatively reached the opposite conclusion in the context of

an FHA case.  In that case, the Eastern District of New York—without providing a detailed

explanation or any case authority—declared that, because "it is well-settled that unreviewed

administrative determinations have absolutely no preclusive effect on discrimination claims in

federal court," DHR and HUD administrative findings do not bar a plaintiff's ability to sue de

novo in federal district court.  *See Telesca v. Long Island Hous. P'ship, Inc.*, 443 F. Supp. 2d

397, 405 (E.D.N.Y. 2006) (citing *Elliott*, 478 U.S. at 796).

 Meanwhile, several other district courts presented with this issue have decided those

cases on other grounds, where appropriate, without confronting Congress' intent as expressed in

the FHA.  *See Novak v. Levenfeld Pearlstein*, No. 13 Civ. 08861, 2014 WL 4555581, at *4 (N.D.

Ill. Sept. 15, 2014) (noting that the issue of administrative preclusion under the FHA "need not

be decided" in a case where there was no final judgment to which collateral estoppel might be

applied); *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 335 (E.D.N.Y. 2012)

(finding, without addressing Congress' intent, that FHA claims were not precluded by a decision

issued by the Town of Islip Housing Authority because the elements of collateral estoppel under

New York law were not satisfied); *Gao v. Snyder Co.*, No. 10 Civ. 1025 (BGC), 2010 WL

3037526, at *4 (C.D. Ill. July 13, 2010) (denying a motion to dismiss based on *res judicata* after

concluding that the non-binding cases located by the court in support of administrative

preclusion under the FHA provided insufficient support for the Court "to confidently give a recommendation without additional briefing" and a "more detailed factual record" to determine whether the agency was acting in a judicial capacity); *Ramos*, 1997 WL 589008, at *4 (deeming it unnecessary for the court to address "whether administrative preclusion can ever apply" to claims under the FHA because there was no evidence in the record to support a finding that the particular administrative proceeding at issue was the type of quasi-judicial determination that might be entitled to preclusive effect).[25]

The Government maintains that the courts that have held that administrative preclusion is permissible within the scheme of the FHA have ignored pivotal language in § 3613 of the statute. Doc. 40 at 12-13.  The Government directs the Court's attention to 42 U.S.C. § 3613(a)(1)(B)(2), which provides that an aggrieved party who has filed a complaint with HUD may subsequently commence a civil action in federal or state court "without regard to the status" of any such complaint filed.[26]  Through this clause, the Government argues, the FHA "presumes that, whether an administrative complaint is investigated by HUD or by a state agency to which the complaint was referred under 42 U.S.C. § 3610(f), an adverse administrative decision does not preclude a subsequent civil action based on the same grievance."  *Id.* at 11-12.

Indeed, while there is no definitive binding authority regarding the preclusive effect of a state agency determination rendered pursuant to a complaint transferred from HUD under § 3610(a), it is clear that a "reasonable cause" determination by HUD, not referred to a state agency and not yet adjudicated in front of a HUD ALJ or in federal district court, cannot

---

[25] In *Ramos*, the Court did not address the preclusive effect of an unreviewed state agency determination, such as by DHR, but stated that the findings of a HUD investigation have no preclusive effect when an aggrieved party files suit pursuant to 42 U.S.C. § 3613.

[26] Although the *Ward* Court observed that a plaintiff may file suit under the FHA without having pursued *any* administrative remedies, 42 U.S.C. § 3613(a)(1), it did not offer any analysis of § 3613(a)(1)(B)(2).

preclude an aggrieved party's claims under § 3613.  *See Ramos*, 1997 WL 589008, at *1, 3

(holding that a reviewed and affirmed determination by HUD that there was no reasonable cause

to believe that a discriminatory housing practice had occurred could not be given preclusive

effect) (citing § 3613(a)(1)(B)(2)); *Marinoff v. United States Dep't of Hous. and Urban Dev.,*

892 F. Supp. 493, 496 (S.D.N.Y.1995), *aff'd*, 78 F.3d 64 (2d Cir. 1996) (noting that a plaintiff

may file suit in district court under § 3613 "[r]egardless of whether or not HUD determines that

reasonable cause exists").  In fact, there are only two statutory exceptions to an aggrieved party's

right to commence a suit under § 3613(a):  (1) an aggrieved party may not file suit if the

Secretary or a certified state or local agency "has obtained a conciliation agreement with the

consent of [the] aggrieved person," and (2) an aggrieved party may not file suit if an

administrative law judge has commenced a hearing on the record with respect to a charge of

discrimination issued by the Secretary.  *See* §§ 3613(a)(2), (a)(3); *see also Mitchell v. Cellone*,

389 F.3d 86, 90 (3d Cir. 2004) ("As we read the statute, the plain language of sections 3610 and

3613 state that a dual enforcement scheme exists that allows an aggrieved party to pursue both

private and administrative enforcement until such time as either avenue has achieved resolution

of the claim.").

East River's summary judgment argument pertains to a state agency determination

following a § 3610 referral rather than a determination by HUD itself.  Nonetheless, the

Government cogently suggests, § 3613(a)(1)(B)(2) demonstrates that Congress did not intend for

administrative determinations under § 3610, whether issued by HUD or certified state agencies,

to preclude aggrieved parties from seeking vindication of their rights through civil actions.

Logic would also seem to compel the conclusion that Congress did not intend, by requiring that

FHA complaints be referred to certain state agencies, to grant parties whose complaints were so

referred *less* rights than those complaints handled by HUD.[27]  Indeed, in HUD's letter to Aaron, explaining that her complaint had been transferred to DHR, HUD informed Aaron that, "[i]n addition to filing [a] complaint with [DHR]," she had the right to file a civil lawsuit in Federal District Court pursuant to § 3613.  Doc. 28, Ex. K.  Although the interests of the aggrieved parties in this case are represented not by the parties themselves, under § 3613(a), but rather by the Government, pursuant to § 3612, it would be nonsensical to state that an aggrieved party would not be precluded from bringing suit under § 3613(a) following an agency's no probable cause determination but that the Government bringing suit on a party's behalf is so precluded.

The Government also identifies two relatively recent decisions of the Second Circuit Court of Appeals that—while they do not explicitly examine Congress' intent with regard to administrative agency preclusion under the FHA—lend support to the Government's position: *Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008) and *Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 51 (2d Cir. 2012), *cert denied*, 133 S. Ct. 1280. (2013).

In *Boykin*, the plaintiff filed an initial complaint with HUD, which, like Aaron's, was referred to DHR pursuant to § 3610(f).  521 F.3d at 205.  After DHR made a finding of no probable cause and sent the plaintiff a letter describing its determination, HUD also sent her a letter, almost four months later, stating that it, too, was closing its own investigation of her complaint based on DHR's findings.  *Id.* at 206.  When the plaintiff filed suit in the Western District of New York, pursuant to 42 U.S.C. § 3613, the district court dismissed her action as untimely, finding that the two-year statute of limitations ceased tolling upon the issuance of

---

[27] This interpretation has been endorsed by the Third Circuit Court of Appeals, which held that a suit by aggrieved parties under § 3613 was not precluded by state proceedings pursuant to a § 3610 referral, which included a state agency's determination that there was probable cause to credit the parties' allegations and consequent litigation on their behalf in state court.  *Mitchell*, 389 F.3d at 90.  The Court held that the "only limitation" on private enforcement under § 3613 was that "an aggrieved person may not initiate a private suit if administrative enforcement has been activated and such enforcement has led to the commencement of an administrative hearing on the record."  *Id.* (citing 42 U.S.C. § 3613(a)(3)).

DHR's case-closed letter, rather than HUD's subsequent letter. *Id.* The Court of Appeals disagreed and determined that the filing limitation was considered tolled until the date of HUD's final letter. *Id.* at 211. The *Boykin* Court did not address whether any of the plaintiff's claims would have been barred by *res judicata* or collateral estoppel. However, the Government suggests that the *Boykin* decision, written by then-Circuit Judge Sotomayor, "appears to presume that a timely, well-pleaded FHA claim can proceed in federal court, notwithstanding a 'no probable cause' determination by DHR." Doc. 40 at 12.

In *Taylor*, the plaintiff filed complaints with both HUD and DHR, alleging discriminatory housing practices on the basis of disability in violation of the FHA and the State Human Rights Law. 690 F.3d at 47. DHR, and later HUD, determined that there was no probable cause to support plaintiff's allegations of housing discrimination, no evidence to support a finding that plaintiff was disabled, and no evidence to support plaintiff's contention that defendants' alleged discriminatory practice was related to any disability. *Id.* She then filed suit in district court, which granted the defendants' motion for summary judgment but denied defendants' motion for attorneys' fees. *Id.* On appeal, the Second Circuit considered the plaintiff's challenge to the district court's decision on the merits and defendants' challenge to the district court's denial of attorneys' fees. *Id.* Although the case, like *Boykin*, did not turn on a determination regarding *res judicata* or collateral estoppel, the Court of Appeals—in reaching its decision on the matter of attorneys' fees—affirmatively weighed in on the preclusive effect of a DHR no probable cause finding. *Id.* at 50. The Court explained that while DHR's findings of fact, no probable cause determination, and dismissal of plaintiff's administrative complaint "did not preclude further litigation," these adverse rulings should have factored into the decisionmaking of plaintiff—a licensed attorney—when she filed a meritless claim in federal court. *Id.* at 50-51.

40

*Boykin* and *Taylor* both buttress the Government's interpretation of the FHA as expressing Congress' intent to deny preclusive effect to unreviewed determinations by state administrative agencies.  Moreover, the Government observes that each of the district court opinions stating the opposite conclusion was issued prior to *Boykin*.  *See* Doc. 40 at 13 ("The Government has not located any post-*Boykin* case in which a federal court in this circuit has concluded that unreviewed DHR determinations may have preclusive effect in civil actions under the FHA.").  There is logical force to the Government's argument.  However, this Court need not reach an ultimate conclusion regarding Congress' intent as expressed in the FHA, because even if the FHA permits for administrative agency preclusion in appropriate cases, the particular agency determination in this case would bear no preclusive effect on the Government's claims on behalf of Stephanie Aaron.

### iii.  Neither *Res Judicata* Nor Collateral Estoppel Bars the Aaron Claims.

Assuming, *arguendo*, that the logic of *Ward* applies in this case, and FHA claims in federal court may be precluded by unreviewed state administrative agency determinations, neither *res judicata* nor collateral estoppel would bar the Government's claims regarding Stephanie Aaron.   Because Aaron and the Government are not in privity, because DHR did not reach any final determination with regard to Aaron's complaint, and because Aaron did not have a full and fair opportunity to litigate her claims before the DHR, neither *res judicata* nor collateral estoppel attach to DHR's investigation of Aaron's initial complaint.

#### a.  No Privity

The Government asserts that it cannot be bound by DHR's no probable cause determination because it is not in privity with Aaron.  Doc. 40 at 13.  Under New York law, to establish privity for purposes of *res judicata* or collateral estoppel, there must be a "connection

between the parties . . . such that the interests of the nonparty can be said to have been represented in the prior proceeding." *Green v. Santa Fe Indus.*, 70 N.Y.2d 244, 253, 514 N.E.2d 105, 108 (1987). Privity may also be established when "the party to be precluded can be said to have controlled the conduct of the prior action to further his own interests." *Id.* at 254, 514 N.E.2d at 108. In light of the "severe consequences" of preclusion, where privity is in question, "[d]oubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate." *Buechel*, 97 N.Y.2d at 304-05, 766 N.E.2d at 920 (2001).

"The general rule is that governmental agencies are not bound by private litigation when the agency's action seeks to enforce a federal statute that implicates both public and private interests." *United States v. Katz*, No. 10 Civ. 3335, 2011 WL 2175787, at *5 (S.D.N.Y. June 2, 2011) (citing *Williamson v. Bethlehem Steel Corp.,* 468 F.2d 1201, 1203 (2d Cir.1972)); *see also Herman v. S. Carolina Nat. Bank*, 140 F.3d 1413, 1425 (11th Cir. 1998) (describing the "well-established general principle that the government is not bound by private litigation when the government's action seeks to enforce a federal statute that implicates both public and private interests"); *Town of Garner*, 720 F. Supp. 2d at 731 (holding that because the United States was not a party to a local administrative action and was not in privity with the aggrieved party, it could not be precluded from bringing its claims under a theory of *res judicata*). Here, because the Department of Justice has "statutory duties, responsibilities, and interests" in enforcing the FHA that are "broader than the discrete interests of any particular private party," the United States is "not merely a proxy for the victims of discrimination." *Katz*, 2011 WL 2175787, at *5. (quoting *Gen. Tel. Co. of the Northwest, Inc. v. EEOC,* 446 U.S. 318, 326 (1980)).

This position is buttressed by the structure and language of the FHA, which demonstrate Congress's intention to distinguish the interests of the Attorney General from those of aggrieved private parties.  As the Government observes:

> Congress empowered the Attorney General to seek civil penalties 'to vindicate the public interest' and injunctive relief against individuals who flout the act.  42 U.S.C. § 3614(d).  Moreover, recognizing that the interests of the Government and those of an aggrieved person are not identical even when the Government seeks relief on the aggrieved person's behalf, the FHA allows an aggrieved person to intervene in an action, such as this one, brought by the Attorney General pursuant to 42 U.S.C. § 3612(o) or 3614(a).  *See* 42 U.S.C. §§ 3612(o)(2), 3614(e).[28]

Doc. 40 at 14.

Defendant disputes this categorization, arguing that the fact of the Government's pursuing this case "on behalf of" the aggrieved parties establishes privity in and of itself. Doc. 29 at 11-12.  However, the Government's interests in bringing this action are not coextensive with Aaron's interests in prosecuting her complaint before the DHR.  Moreover, the Government cannot be said to have controlled the conduct of any party during the DHR proceeding, as Aaron's complaint was referred to the Government for a civil action only following the termination of Aaron's DHR proceeding and the completion of HUD's subsequent investigation.[29]  Thus, the Court finds that the Government was not in privity with Aaron during the DHR investigation, and therefore neither *res judicata* nor collateral estoppel bars its prosecution of the Aaron claims.  *See Katz*, 2011 WL 2175787, at *6-7 (holding that absence of

---

[28] At one point, Aaron made a motion to intervene pursuant to § 3612(o), which she ultimately withdrew.  Doc. 51.

[29] Defendant also maintains that the Government is a privy of both DHR and Aaron for purposes of preclusion because the claims regarding Aaron in the Government's Amended Complaint are "'derivative' of Aaron's claims of discrimination decided by DHR."  Doc. 29 at 10 (citing *D'Arata v. New York Centr. Mutual Fire Ins. Co.*, 76 N.Y.2d 659, 664 (1990).  Defendant argues, "Aaron's DHR complaint and her HUD complaint, which serves as the predicate for the Amended Complaint's allegations with respect to Aaron, are identical and there is no material difference between the facts and issues raised therein."  *Id.* at 10-11.  These assertions do not establish privity, and the cases cited by Defendant are inapposite.  *See* Doc. 40 at 15 n. 3.  Furthermore, Defendant does not endeavor in its memorandum of law or its reply in support of the instant motion to establish that Aaron represented the Government's interests or that the Government shared control of Aaron's presentation of her claims to the DHR.

privity prevented defendant from using *res judicata* to bar the United States from pursuing a pattern and practice claim or individual-based relief under the FHA); *see also Town of Garner*, 720 F. Supp. 2d at 731 (because Government was not a party to prior administrative action, neither *res judicata* nor collateral estoppel could bar the Government's FHA suit).

### b.  No Final Determination by DHR

Under New York law, "the quasi-judicial determinations of administrative agencies" may become "conclusive and binding on the courts" through the doctrines of *res judicata* and collateral estoppel only when such determinations are "final."   *Ryan*, 62 N.Y.2d at 499-500, 467 N.E.2d 487 (internal quotation marks and citations omitted).  In this case, the parties contest whether or not Aaron's complaint has already yielded a "final" determination.

East River argues that the April 17 Appellate Division decision not only annulled DHR's administrative convenience dismissal but also reinstated its initial dismissal of Aaron's complaint following its no probable cause determination, which relief East River sought in its Article 78 petition.  *See* Doc. 28, Ex. U ("Wherefore, Petitioner respectfully requests that an Order be issued annulling the Challenged Order and reinstating the Dismissal Order.").  The Government, meanwhile, argues that the Appellate Division decision "does not purport to annul DHR's decision to reopen its investigation following its initial determination."  Doc. 40 at 16. The Government is correct:  The Appellate Division could not have reviewed DHR's decision to reopen the investigation, which DHR was entitled to do under Rule 20(a) of its own Rules of Practice.  *See* 9 N.Y.C.R.R. § 465.20(a) (noting that DHR may, on its own motion, whenever justice requires, reopen a proceeding, determination or record and take such action as may be deemed necessary).  The Appellate Division reviewed and annulled only DHR's decision to dismiss Aaron's complaint for "administrative convenience" after DHR reopened the complaint.

44

*See, e.g.*, *New York & Presbyt. Hosp. v. N.Y. State Div. of Human Rights*, 78 A.D.3d 507, 507 (N.Y. App. Div. 2010) (holding that the DHR Commissioner's *sua sponte* order to reopen a discrimination hearing in order to complete the record was not a final determination within the meaning of N.Y. C.P.L.R. § 78).

By the time the Appellate Division annulled DHR's administrative convenience dismissal, DHR had already referred the complaint back to HUD, HUD had issued a charge of discrimination, East River had elected to proceed in federal court, and the Government had filed its Complaint in the instant case.   The "anomalous result," is that "no final order or determination by DHR is in effect" and "the DHR investigation is again open despite the fact that HUD conducted and concluded its own investigation following the referral by HUD." Doc. 40 at 17 & n. 4.  In light of the unusual procedural posture of Aaron's complaint, there has been no final determination of her claims to which preclusive effect might apply.

### c. No Full and Fair Opportunity to Litigate or Procedures Substantially Similar to Those Used in a Court of Law

Because Aaron and the Government are not in privity, and because DHR has issued no final determination in Aaron's case, the Aaron claims cannot be precluded by *res judicata* or collateral estoppel.  But, even if the Government and Aaron were in privity, and even if DHR's no probable cause finding was a final determination subject to preclusive effect, *res judicata* and collateral estoppel would still be inapplicable.

Under New York law, collateral estoppel requires "that an issue in the present proceeding be identical to that necessarily decided in a prior proceeding, and that in the prior proceeding the party against whom preclusion is sought was accorded a full and fair opportunity to contest the issue."  *Allied Chem., an Operating Unit of Allied Corp. v. Niagara Mohawk Power Corp.*, 72

45

N.Y.2d 271, 276, 528 N.E.2d 153 (1988) (citations omitted).[30]  These elements are required

whether collateral estoppel is sought for an agency determination or a court decision.  *Id.*

It is the Government's burden to establish that Aaron did not have a full and fair

opportunity to be heard such that collateral estoppel may apply.  *Kosakow*, 274 F.3d at 733; *see

also Buechel*, 97 N.Y.2d at 306, 766 N.E.2d at 921 ("Because defendants were in privity with

Rhodes, the critical question is whether Rhodes had a full and fair opportunity to litigate the

issue.").  In evaluating the Government's arguments, the Court must examine, "the nature of the

proceeding followed by the DHR in investigating [Aaron's] claim," *Kosakow*, 274 F.3d at at 734,

and explore "the various elements which make up the realities of litigation."  *Schwartz v. Pub.

Adm'r of Bronx Cnty.*, 24 N.Y.2d 65, 72, 246 N.E.2d 725 (1969).  These include "such

considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the

extent of the litigation, the competence and experience of counsel, the availability of new

evidence, indications of a compromise verdict, differences in the applicable law and

foreseeability of future litigation."  *Id.*

Where issue preclusion is sought based on the determination of an administrative agency,

the Court must consider "additional factors" beyond those required for collateral estoppel in the

context of a court decision—identity of issue and a full and fair opportunity to be heard.  *Allied

Chem*, 72 N.Y.2d at 276, 528 N.E.2d 153.  While these factors "are often summed up in the

beguilingly simple prerequisite that the administrative decision be 'quasi-judicial,' . . . the

determination of whether an agency proceeding was 'quasi-judicial' actually involves a

multifaceted inquiry."  *Id.* (citations omitted).  The New York Court of Appeals described this

inquiry:

---

[30] The Government appears not to contest the "identity of issue" prong of collateral estoppel under New York law.

First, the court must make the threshold determination that the agency has the statutory authority to act adjudicatively.  If the agency has such authority, the court must then ascertain whether the procedures used in the administrative proceeding assured that the information presented to the agency were sufficient both quantitatively and qualitatively, so as to permit confidence that the facts asserted were adequately tested, and that the issue was fully aired. . . .  Additionally, the expectation of the parties is important in determining the fairness of applying issue preclusion in a particular case; thus, a party explicitly soliciting resolution of an issue from an agency, who fully participates in the administrative proceeding which follows with the expectation that all will be bound by the result reached there, may be fairly precluded from relitigating the issue in a subsequent proceeding . . . .  The court must look at the over-all context of the agency's decision to assess whether according a preclusive effect to a particular agency determination is consistent with the agency's scheme of administration; for example, the agency's need for flexibility, and its need to modify prior determinations in order to adapt its policy to changing conditions, may counsel against applying issue preclusion to a particular administrative decision . . . .

*Id.* at 276-77, 528 N.E.2d 153.

The Second Circuit has treated these two inquiries—whether a party had a full and fair opportunity to be heard and whether or not an agency proceeding used "quasi-judicial" procedures—as overlapping.  *See Kosakow*, 274 F.3d at 733-36 ("analyzing the realities of [a] DHR proceeding under *Schwartz* and *Allied*," and concluding that the relevant issue was neither "adequately tested" nor "fully aired" at that proceeding, such that a party was "not collaterally estopped from relitigating that issue").  Both merit a careful examination of the particular procedures employed by DHR in reaching a determination deemed to bear preclusive influence.

In *Kosakow*, in the context of an FMLA case, the Second Circuit Court of Appeals addressed, as a matter of first impression, whether "a determination of no probable cause by the DHR, reached *without* a hearing and *unreviewed* in state court, preclude[s] litigation of a subsequent claim in federal court based on the same events."   *Id.* at 727 (emphasis added).[31]

---

[31] DHR's finding in that case was based on plaintiff's three-page complaint, defendant's thirteen-page response and forty pages of supporting documents, and plaintiff's eleven-page rebuttal accompanied by twenty pages of supporting documentation. *Id.* at 734.   It appeared that the "no-probable-cause determination was based primarily, if not exclusively, upon a review of the papers submitted." *Id.*

The Court held that "collateral estoppel would not apply to [DHR] adjudications, notwithstanding identity of issue, because, under New York law, [DHR] plaintiffs are not afforded a 'full and fair opportunity' to litigate their discrimination claims in that forum." *Vargas*, 2008 WL 361090, at *4 (quoting *Kosakow*, 274 F.3d at 736).[32]

As in *Kosakow*, there is no indication in this case that DHR's investigation of Aaron's complaint entailed any exchange of discovery, witness interviews, conferences between the parties, or hearings.  Doc. 40 at 18; Copeland Decl. ¶ 4.[33]  Rather, the investigation appears to have consisted of a review of Aaron's two-page complaint, East River's response, letters exchanged by the parties, a medical questionnaire provided by Aaron's doctor, and interviews with Aaron herself.  Doc. 28, Exs. L, M, N, O.  The complaint and response are unaccompanied by documentary evidence and resemble the types of pleadings that, in federal court, typically would not serve as the basis for conclusions on the merits of a plaintiff's allegations.

It is highly relevant, though not dispositive, that DHR held no hearing.  Indeed, the "proverbial right to a day in court does not mean the actual presentation of the case in the context of a formal, evidentiary hearing, but rather the right to be duly cited to appear and to be afforded

---

[32] The Court had previously held that a plaintiff could be precluded from relitigating issues that had been "fleshed out" at a full-fledged DHR hearing or reviewed in state court.  *DeCintio*, 821 F.2d at 118; *Kirkland*, 828 F.2d at 108, 109 (noting that the Court's holding regarding the plaintiff's opportunity to litigate its claims did not "stand solely on our view of New York State law with respect to the finality of . . . [a DHR] finding of no probable cause" and was rather supported by the claimant's pursuit of review of that DHR determination in state court).  *Id.*  As one court in this district has observed, *Kosakow* "cast doubt upon the Second Circuit's earlier decision in *DeCintio*, where it concluded—as an alternative ground for its ultimate decision—that New York courts would afford a [DHR] decision preclusive effect."  *Vargas*, 2008 WL 361090, at *4 (citing *DeCintio*, 821 F.2d at 118-19).  In light of *Kosakow*'s clear statement regarding the preclusive effect—or lack thereof—of unreviewed DHR determinations, "for the purposes of New York collateral estoppel doctrine . . . , collateral estoppel cannot attach by virtue of an unreviewed [DHR] decision alone."  *Id.*

[33] One factor that weighed in *favor* of collateral estoppel in *Kosakow* but does not in this case was that no new evidence had become available after the dismissal of plaintiff's DHR complaint.  *Kosakow*, 274 F.3d 734.  By comparison, since DHR issued its no probable cause determination in Aaron's case, the Government has conducted at least some discovery with East River and gained access to more information and evidence than was available to Aaron during her DHR proceeding.  For example, see Doc. 46, Ex. A, a copy of East River's responses and objections to the Government's First Set of Interrogatories and Document Requests, attached as an exhibit to East River's reply in support of its motion for summary judgment on the Government's Fifth Cause of Action (Doc. 30).

an opportunity to be heard." *Mitchell*, 553 F.2d at 271 (internal quotation marks and citations omitted). Courts regularly issue dispositive motions without holding formal hearings on the record. *Kosakow*, 274 F.3d at 735. However, a party in a judicial proceeding "would not be subject to a summary judgment motion in a judicial proceeding until after discovery, including the opportunity to discover contrary documentary evidence and depose the defendant's witnesses." *Id.* at 735. Accordingly, DHR's no probable cause finding, reached without any form of hearing or discovery, cannot be said to have afforded Aaron a full and fair opportunity to litigate the issue of East River's alleged discrimination or to have employed procedures substantially similar to those used in a court of law. *Id.* ("Thus, while there is similarity between the DHR proceeding and a motion for summary judgment under the federal rules, it cannot be ignored that the DHR makes factual conclusions based on a record that is far less developed than that before a federal court."); *Heinitz v. Standard Const. Inc.*, 202 A.D.2d 843, 843-44, 609 N.Y.S.2d 102 (1994) ("[Plaintiff's] OSHA complaint was summarily dismissed without an evidentiary hearing. As such, it is clear that in the OSHA proceeding [plaintiff] did not have the opportunity to employ procedures substantially similar to those utilized in a court of law . . . and, thus, a full and fair opportunity to contest the issues involved.") (internal citations and quotation marks omitted).

An additional element militating against preclusion is the fact that the State Human Rights Law contemplates judicial review of DHR determinations as part of an aggrieved party's full and fair opportunity to litigate its claims. To be precise, Executive Law § 298 provides that an aggrieved person has 60 days to commence an Article 78 proceeding to challenge a DHR finding of no probable cause and dismissal as arbitrary and capricious. In Aaron's case, DHR's no probable cause finding was never reviewed by a court. Although East River speciously

argues that Aaron had and relinquished this opportunity, Doc. 29 at 16, the reality is that Aaron had no incentive to seek such review, because her complaint was reactivated and transferred to HUD before her time to seek it had expired.  *See* Copeland Decl. ¶¶ 4-5 & Ex. B.  Moreover, as stated above, it cannot be argued that the Appellate Division's review of the "administrative convenience" dismissal constituted judicial review of Aaron's discrimination claims.

Based on the Second Circuit's decision in *Kosakow* and on the realities of DHR's proceedings with regard to Aaron's complaint, it is evident that Aaron did not have a full and fair opportunity to litigate the issue of discrimination in that forum, and that DHR did not employ procedures substantially similar to those used in a court of law.  In a case where no state court has reviewed a DHR no probable cause determination, that determination may have preclusive effect only if DHR's administrative proceedings were "adjudicatory in nature."  *McLean v. Metro. Jewish Geriatric Ctr.*, No. 11 Civ. 3065 (PKC), 2013 WL 5744467, at *6 (E.D.N.Y. Oct. 23, 2013).  Yet in this case, "the record . . . does not clearly establish that [DHR] was acting in an adjudicatory, as opposed to an investigatory, capacity . . . ."  *Id.*  Therefore, even if there were privity between Aaron and the Government, which there is not, and even if there had been a final determination in this case, which there has not, the Government cannot be precluded from litigating its claims regarding Aaron.

## IV. Defendant's Motion to Dismiss and/or for Summary Judgment Dismissing the Government's Fifth Cause of Action

In a separate motion, East River asks the Court to dismiss the Government's Fifth Cause of Action pursuant to Rule 12(b)(6) and/or Rule 12(c) of the Federal Rules of Civil Procedure, or alternatively to grant East River partial summary judgment dismissing the Fifth Cause of Action

pursuant to Rule 56(a).  Doc. 30 at 1.  This motion, too, is denied, pursuant to both Rule 12(c)[34]

and Rule 56.

### A.  Legal Standards

The well-established legal standard for a summary judgment motion under Rule 56 is

described above.  *See* Part III.  Still, for the purposes of the instant motion, it is worth

emphasizing again that courts considering summary judgment must construe all facts, resolve all

ambiguities, and draw all reasonable inferences in favor of the non-moving party, *Brod*, 653 F.3d

at 164, that summary judgment will rarely be granted prior to the completion of discovery, and

that the moving party's burden on a summary judgment motion is greater where discovery is

incomplete.  *See, e.g.*, *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 304 (2d Cir. 2003);

*Hellstrom*, 201 F.3d at 97; *Indergit*, 2010 WL 1327242, at *3.

Rule 12(c), the other possible avenue for the dismissal sought by East River, provides

that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for

judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is appropriate if,

from the pleadings, the moving party is entitled to judgment as a matter of law."  *Burns Int'l Sec.*

*Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537*, 47

F.3d 14, 16 (2d Cir. 1995) (citations omitted).

On a Rule 12(c) motion, the Court applies the same standard of review applicable on a

motion to dismiss under Rule 12(b)(6).  *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.

2006).  In resolving the motion, "the court considers 'the complaint, the answer, any written

documents attached to them, and any matter of which the court can take judicial notice for the

factual background of the case.'"  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d

---

[34] Because the pleadings are closed, the proper vehicle for East River's motion to dismiss is Rule 12(c).  *See* FED. R. CIV. P. 12(b)(6), 12(c).

Cir. 2011) (quoting *Roberts v. Babkiewicz,* 582 F.3d 418, 419 (2d Cir.2009)). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

However, the Court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

**B.  Discussion**

The Fifth Cause of Action in the Government's Amended Complaint states a claim under § 3614(a) of the FHA, which provides:

> Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, ***or*** that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance, the Attorney General may commence a civil action in any appropriate United States district court.

42 U.S.C.A. § 3614(a) (emphasis added). In the Amended Complaint, the Government raises both of the two possible grounds for a suit under § 3614(a), alleging that East River's conduct constitutes a "pattern or practice of resistance to the full enjoyment of rights granted by the

[FHA]," and/or a "denial to a group of persons of rights granted by the [FHA], . . . which denial raises an issue of general public importance."  Am. Compl. ¶ 95.  In support of this cause of action, the Government highlights at least six reasonable accommodation requests submitted by the three Complainants in this case, none of which were granted by East River.  Gov't's Mem. Law in Opp'n to Def.'s Mot. to Dismiss and/or for Summ. J. at 13 (Doc. 44); Am. Compl. ¶¶ 39-40, 42-45, 53, 62-68, 74-75, 82-85.  The Government further alleges that "[t]he discriminatory actions of East River were intentional and taken in disregard of Complainants' rights," *id.* ¶ 97, and that "[o]ther persons may have been injured by East River's discriminatory actions and practices . . . and such individuals are 'aggrieved' persons under the [FHA]."  *Id.* ¶ 96.  East River nonetheless contends that the Government's pleading, "in light of the applicable law, . . . fails to state a valid cause of action," and that "[e]ven assuming the allegations to be true, the pleading demonstrates no genuine issue as to any material fact."  Silverbush Cert. (Doc. 31) at 2.  Accordingly, East River requests dismissal pursuant to Rule 12(c) or summary judgment pursuant to Rule 56 as to the Government's Fifth Cause of Action.

As with other provisions of the FHA, courts look to Title VII for guidance regarding the Government's burden when it alleges a "pattern or practice" of discrimination.  *See, e.g.*, *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997) ("We apply Title VII discrimination analysis in examining [FHA] discrimination claims."); *Larkin v. Michigan Dep't of Social Servs.*, 89 F.3d 285, 289 (6th Cir. 1996) ("Most courts applying the FHA, as amended by the [Fair Housing Act Amendments (FHAA)], have analogized it to Title VII . . . .").  In the Title VII context, the Supreme Court has held that where the Government alleges "a systemwide pattern or practice of resistance to the full enjoyment of Title VII rights, the Government ultimately ha[s] to prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts."

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977).   The Government must show that "discrimination was the company's standard operating procedure."   *Id.*

Courts apply this same standard to pattern or practice cases under § 3614(a).  *See United States v. Big D Enterprises, Inc.*, 184 F.3d 924, 930 (8th Cir. 1999) ("Isolated or sporadic acts of discrimination are insufficient to prove a pattern or practice under the FHA."); *United States v. Balistrieri*, 981 F.2d 916, 929 (7th Cir. 1992) (requiring proof at trial, in a § 3614(a) case, that discrimination was defendants' "standard operating procedure").  However, in the FHA and Title VII contexts, courts have also observed that "there is no threshold number of incidents that must occur before the Government may initiate litigation."  *United States v. Garden Homes Mgmt., Corp.*, 156 F. Supp. 2d 413, 420 (D.N.J. 2001); *see also Ste. Marie v. E. R. Ass'n*, 650 F.2d 395, 406 (2d Cir. 1981) (noting that "the definition of a pattern or practice is not capable of a precise mathematical formulation"); *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 124 (5th Cir. 1973) ("The number of [FHA violations] . . . is not determinative. . . . [N]o mathematical formula is workable, nor was any intended.  Each case must turn on its own facts.").  Additionally, "whether the evidence presented demonstrates a pattern or practice is ordinarily a question of fact for the jury."  *Garden Homes*, 156 F. Supp. 2d at 420 (citing *Balistrieri,* 981 F.2d at 930).

Importantly, even if a defendant's actions "do not amount to a 'pattern or practice' of discrimination," they can be liable for violating the FHA under the "general public importance" or "group of persons" prong of § 3614(a).  *United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129, 1139 (D. Idaho 2003); *see also United States v. Habersham Properties, Inc.*, 319 F. Supp. 2d 1366, 1376 n. 7 (N.D. Ga. 2003) (observing that the second prong of § 3614(a) "allows the government to pursue a case, even if it does not rise to the level of pattern or practice, so long as

the conduct jeopardizes important public interests").  This second prong has no equivalent in the Title VII context.  *See United States v. Cochran*, No. 4:12 Civ. 000220-FL, 2014 WL 3955069, at *9 (E.D.N.C. Aug. 13, 2014) ("Unlike the 'pattern or practice' standard, the 'group of persons' standard in the FHA . . . has no analog in the Title VII government enforcement provision.") (citing *United States v. Hunter*, 459 F.2d 205, 216 n. 12 (4th Cir. 1972)).  Therefore, courts are left with far fewer examples of the pleading and evidentiary burdens associated with a cause of action under this clause of § 3614(a).  Courts have held, however, that whether a denial poses "an issue of public importance is a determination to be made by the Attorney General," *Taigen & Sons*, 303 F. Supp. 2d at 1139, and that the Attorney General's belief in making this determination is not subject to judicial review.  *United States v. Yonkers Bd. of Educ.*, 624 F. Supp. 1276, 1291 n. 9 (S.D.N.Y. 1985) *aff'd*, 837 F.2d 1181 (2d Cir. 1987) ("The Attorney General's determinations of reasonable cause and general public importance are not reviewable.") (citation omitted); *see also Bob Lawrence*, 474 F.2d at 125 ("It is not for the District Court to determine when an issue of public importance justifying the intervention of the Attorney General is raised. . . . Just as the Attorney General has discretion when to exercise the prosecutorial function in criminal cases, . . . so too the Attorney General must have a wide discretion to determine when an issue of public importance justifying his intervention under [the FHA].").

### i.   Motion to Dismiss Pursuant to Rule 12(c)[35]

The question, with regard to East River's motion to dismiss, is whether the allegations in the Amended Complaint, accepted as true, are sufficient to state a claim that East River engaged

---

[35] Defendant's Reply Certification in Further Support of Motion to Dismiss and/or for Summary Judgment Dismissing the Government's Fifth Cause of Action is not properly considered under Rule 12(c).  *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("[A] district court errs when it considers affidavits and exhibits

in a pattern or practice of discrimination in violation of the FHA or denied to a group of persons

a right or rights granted by the FHA, which denial raises an issue of public importance.

However, "few courts have addressed what a complaint must allege in order to state a plausible

pattern-or-practice claim" under Title VII or the FHA.[36] *See Barrett v. Forest Labs, Inc.*, No. 12

Civ. 5224 (RA), 2014 WL 4058683, at *13 (S.D.N.Y. Aug. 14, 2014).  Fewer still, it would

appear, have addressed what a complaint must allege in order to state a claim under the "group of

persons" or "general public importance" prong of § 3614(a).  East River contends that, in order

to state claim, the Government would have needed to include "allegations comparing

[Eisenberg's and Gilbert's] experience[s] to those of nearly 1700 other complainants in the

building," to provide "statistical evidence directed at establishing an overall pattern or practice of

intentional discrimination," to offer more than anecdotal evidence, and to allege that "the

Complainants were subject to a single overarching policy of discrimination."   Def.'s Mem. Law

---

submitted by defendants . . . or relies on factual allegations contained in legal briefs or memoranda . . . in ruling on a 12(b)(6) motion to dismiss.") (internal citations, quotation marks, and alterations omitted).

[36] It bears mention that a vast majority of the cases cited by East River in support of its motion to dismiss are cases that address the Government's burden of proof in a pattern or practice case at the summary judgment or trial phase rather than the pleading requirements for a pattern or practice claim. *See, e.g.*, *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 871-2 (1984) (addressing a district court's pattern or practice finding at the conclusion of a trial); *Teamsters*, 431 U.S. 324 (addressing the Government's burden of proof with regard to Title VII pattern or practice claims at trial); *Bell v. E.P.A.*, 232 F.3d 546, 549 (7th Cir. 2000) (reviewing district court's grant of summary judgment); *Middleton v. City of Flint, Mich.*, 92 F.3d 396, 405 (6th Cir. 1996) (reversing district court's grant of summary judgment); *King v. Gen. Elec. Co.*, 960 F.2d 617, 623-24 (7th Cir. 1992) (reviewing a jury verdict in a "pattern or practice" claim under the ADEA); *Lopez v. Metro. Life Ins. Co.*, 930 F.2d 157, 159 (2d Cir. 1991), *abrogated by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) (affirming district court's findings at trial); *Woodbury v. New York City Transit Auth.*, 832 F.2d 764, 766 (2d Cir. 1987) (reversing district court's finding following a "lengthy bench trial"); *Ste. Marie*, 650 F.2d at 397 (reviewing district court's final judgment); *United States v. City of New York*, 713 F. Supp. 2d 300, 306 (S.D.N.Y. 2010) (concluding that the Government had met its burden of establishing a pattern or practice at trial); *United States v. City of New York*, 631 F. Supp. 2d 419 (S.D.N.Y. 2009) (denying summary judgment dismissing the Government's pattern or practice claim in a Title VII case); *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 691 F. Supp. 2d 372, 376 (S.D.N.Y. 2009) (granting in part and denying in part defendants' summary judgment motion); *E.E.O.C. v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918, 920 (N.D. Iowa 2009) (considering a summary judgment motion); *Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 118 (W.D.N.Y. 2002) *aff'd*, 99 F. App'x 350 (2d Cir. 2004) (stating that plaintiffs had failed to produce "sufficient, admissible, relevant evidence" to "defeat [defendants'] motions for summary judgment based on evidence of a pattern of discrimination"); *In re W. Dist. Xerox Litig.*, 850 F. Supp. 1079, 1082 (W.D.N.Y. 1994) (granting defendant's motion for summary judgment with regard to a pattern or practice claim).

Supp. Mot. to Dismiss and/or Summ. J. at 5 (Doc. 32).  Taking each of these professed

requirements in turn, the Court finds that none were indispensable to the Government's pleading.

East River argues that because the Amended Complaint states only that two of 1700

shareholders were subject to discrimination, the Government's allegations "fall[] short of the

mark required to support [a pattern or practice] claim."  Doc. 32 at 5.  However, the numbers—

two and 1700—marshalled by the Defense in service of its motion are misleading.  The

Government plainly alleges incidents of discrimination by East River with regard to three, not

two, separate proprietary lessees.[37]  Additionally, although the Amended Complaint alleges the

existence of 1,672 housing units at East River, the relevant population is *not* "all East River

shareholders" but rather "those shareholders who suffer from psychiatric disabilities and have

requested leave to keep assistance animals as a reasonable accommodation."  Doc. 44 at 14-15;

*cf. United States v. New York City Transit Auth.*, No. 04 Civ. 4237, 2010 WL 3855191 (SLT), at

*15 (E.D.N.Y. Sept. 28, 2010) (noting the flaw in statistical analysis evaluating the percentage of

the total workforce affected by discrimination verses the percentage of the relevant class).  It will

not be possible for the parties to calculate the relevant class until the completion of necessary

discovery.

Moreover, there is no baseline number of grievances that the Government must allege in

order to prevail on a claim under § 3614(a).  *See United States v. Sturdevant*, No. Civ. A. 07-

2233-KHV, 2009 WL 1211051, at *5 (D. Kan. May 1, 2009) ("Courts have uniformly refused to

establish a minimum threshold number of incidents which must occur before the government can

---

[37] East River contends that, for the reasons set forth in its motion for partial summary judgment with regard to the
Aaron claims, the Government "may not utilize any allegations related to Aaron to support [its] 'pattern or practice'
cause of action," leaving only two complainants' allegations to support the Fifth Cause of Action.  Doc. 31 at 5.
Having denied Defendant's motion for partial summary judgment with regard to the Aaron claims, the Court looks
to those claims, as well as the Eisenberg and Gilbert claims, in evaluating the sufficiency of the Fifth Cause of
Action.

bring a pattern or practice claim."); *see also Big D Enterprises*, 184 F.3d at 931 (holding that the Government had met its burden of demonstrating a pattern or practice at trial where it presented testimony from three victims of housing discrimination); *United States v. Pelzer Realty Co., Inc.,* 484 F.2d 438, 445 (5th Cir. 1973) (finding a pattern or practice based on defendants' treatment of two individuals); *United States v. City of New York*, 713 F. Supp. 2d 300, 323 (S.D.N.Y. 2010) (observing, in a Title VII pattern or practice case, "that the discrimination appeared to impact only four women [did] not diminish the Government's case" at trial); *Garden Homes*, 156 F. Supp. 2d at 421-22 ("Thus, the record contains evidence of at least five incidents of racial discrimination.  More importantly, Defendants' focus on the number of incidents is misplaced. The Fair Housing Act does not obligate the Government to prove a minimum number of violations to establish a pattern or practice of discrimination."); *United States v. Mintzes*, 304 F. Supp. 1305, 1314 (D. Md. 1969) (determining that the Government had established a pattern or practice where defendants made unlawful representations to three property owners).

It is true that numerous courts have held that several isolated incidents, without more, are insufficient to allege a pattern or practice under Title VII or the FHA.  *See, e.g.*, *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 879 (U.S. 1984) (implying that "two or three instances of discrimination" would not suffice for a Title VII pattern or practice claim); *Bob Lawrence*, 474 F.2d at 124 (explaining that the phrase "pattern or practice" in the FHA was "intended to encompass more than an isolated or accidental or peculiar event") (internal quotation marks and citation omitted).  Yet the general rule remains that "the definition of a pattern or practice is not capable of a precise mathematical formulation."  *Ste. Marie*, 650 F.2d at 406.  While "more than two acts will ordinarily be required," if individual incidents are accompanied by evidence of a

policy of discrimination, "perhaps two or even one confirmatory act would be enough" to establish a pattern or practice. *Id.*

Next, East River argues that the Government was required to include statistical evidence in its pleadings. Doc. 32 at 5. To the contrary, even if such statistical analysis were possible at this juncture, it is not essential. The "usefulness" of statistics in a pattern or practice claim generally "depends on all of the surrounding facts and circumstances," *Teamsters*, 431 U.S. at 340, and, while usually relevant in such actions, statistical proof "does not carry dispositive weight." *Garden Homes*, 156 F. Supp. 2d at 423. It would be particularly nonsensical to require statistical evidence before the completion of discovery. That is why another court in this district rejected the argument, in a recent Title VII case, "that Plaintiffs must allege statistics in order to make their claims plausible." *Barrett*, 2014 WL 4058683, at *13. While noting that "statistics are an important way of proving pattern-or-practice claims," the Court observed that "the weight of the case law" suggested that statistics *need not* be "pled in the complaint in order to survive a motion to dismiss," because "in most cases, plaintiffs will be unable to provide reliable statistics before they have access to discovery." *Id.* (collecting cases).

East River also maintains that the Government was required to provide more than anecdotal evidence in order to state a claim. Doc. 32 at 5. This argument, too, has been refuted by cases in this district regarding pattern or practice claims. *See Sidor v. Reno*, No. 95 Civ. 9588 (KMW), 1997 WL 582846, at *10 (S.D.N.Y. Sept. 19, 1997) ("[W]hen there is a small number of employees, anecdotal evidence alone can suffice."); *see also E.E.O.C. v. Propak Logistics, Inc.*, No. 1:09 Civ. 311, 2010 WL 3081339, at *5 (W.D.N.C. Aug. 6, 2010) ("[T]he EEOC may prove this pattern or practice of discrimination through statistical and anecdotal evidence that need not be recited in the complaint."). In fact, depending on the size of the relevant total

population, "anecdotal evidence alone" may even suffice to survive summary judgment and impose liability after trial. *Barrett*, 2014 WL 4058683, at *14 (citing *Sidor*, 1997 WL 582846, at *10; *City of New York*, 713 F. Supp. 2d at 318; *Stoler v. Inst. for Integrative Nutrition*, 13 Civ. 1275, 2013 WL 6068598, at *7 (S.D.N.Y. Nov. 18, 2013)).[38]

Finally, East River contends that the Government, in its pleadings, needed to allege that "the Complainants were subject to a single overarching policy of discrimination." Doc. 32 at 5. Yet East River provides no direct support for this proposition and, in fact, it is belied by the leading cases on pattern or practice liability. For example, the Supreme Court observed in *Teamsters* that, although the Government's pattern or practice lawsuits "have more commonly involved proof of the expected result of a regularly followed discriminatory policy," "a pattern might be demonstrated by examining the discrete decisions of which it is composed." 431 U.S. at 360 n. 46.

Interestingly, in its motion papers, East River provides no arguments to counter the Government's "group of persons" allegation beyond a single paragraph in its reply citing only cases from the Title VII context. These cases provide no direction, given that Title VII contains no provision comparable to the "group of persons" prong of the FHA. *See Cochran*, 2014 WL 3955069, at *9. But even if these cases did support East River's motion to dismiss, the Government correctly argues that, as a result of East River's failure to address this prong of the FHA in its moving papers, it has waived any such argument. *See* Doc. 44 at 17 (citing *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 633-34 (S.D.N.Y. 2014), for the proposition that defendants

---

[38] Even East River acknowledges that "in theory a pattern or practice claim may be proven using only anecdotal evidence." Doc. 32 at 5. Nevertheless, East River claims that "this is not such a case," because the Government's claim "even if assumed to be true, falls far short of proving a coop-wide discriminatory practice, and amounts to the sort of 'isolated' and 'sporadic' instances of alleged discrimination that courts have routinely held is insufficient to satisfy a plaintiff's burden." *Id.*

waived an argument by omitting it from its opening memorandum of law); *see also Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999) (declining to consider an argument raised for the first time in a reply brief).

Accordingly, East River is wrong to suggest that the Government cannot plead a pattern or practice claim without alleging some baseline number of incidents, a single overarching policy of discrimination, or statistical evidence, and East River offers no valid arguments to challenge the Government's "group of persons" claim.  It is entirely possible that—should this case reach summary judgment or trial—the Government will be unable to prevail on its Fifth Cause of Action, as East River suggests.  It would be inappropriate, however, to dismiss this claim under the Government enforcement provision of the FHA based on the pleadings alone. *See Pelzer Realty Co.*, 484 F.2d at 445 ("We do feel, however, that a court's standard of review of the Attorney General's decision to bring an action under § [3614] should be a limited one.  There need not be an actual pattern or practice of resistance or an actual denial that raises an issue of general public importance. The only requirement is that the Attorney General have *reasonable cause* to believe that such conditions exist.").  Therefore, East River's motion to dismiss is denied.

### ii.  Motion for Partial Summary Judgment

In addition to failing on the merits, Defendant's motion may also be denied on the basis that discovery in this case is ongoing.  *See* Doc. 73 (granting Government's request to extend deadline for completion of all discovery until June 1, 2015); Doc. 44 at 6 ("Merits discovery in this case is ongoing and far from complete.").  As established by the cases, cited above, addressing a plaintiff's burden in establishing a "pattern or practice" violation, whether or not the Government can prove such a violation at trial will likely depend on facts that emerge during

discovery.  For example, the Government has noted the importance of ascertaining information regarding the number of tenants who requested permission to keep a service or emotional support animal in their apartments, and information regarding East River's actions or policies, if any, upon receipt of such requests.  Doc. 44 at 11-15.  Similarly, with regard to the "group of persons" prong of § 3614(a), courts have recognized that the Government may learn of other members in the "group" during the pendency of litigation.  *See Balistrieri,* 981 F.2d at 935 ("There was no reason to allow the government to seek damages only for aggrieved persons it knew about at the time it filed its complaint. . . . The government's complaint notified the defendants of the claim against them; the government properly proceeded to flesh out that claim through the discovery process."); *cf. Taigen & Sons*, 303 F. Supp. 2d at 1139 ("[C]ases addressing this issue have concluded that at the liability stage, the government is 'not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the . . . discriminatory policy.") (quoting *Davoll v. Webb,* 194 F.3d 1116, 1147-48 (10th Cir.1999)).

Indeed, discovery inevitably will impact the strength or weakness of the Government's ability to prevail on its Fifth Cause of Action and, in time, reveal whether or not this case presents genuine factual issues for resolution at trial.  As the Government argues, "[W]hile East River ultimately may argue that any discriminatory actions taken with respect to the complainants represent isolated or sporadic incidents, discovery will bear out whether there is support for that defense, and, regardless, a jury will decide whether it agrees."  Doc. 44 at 2.

Additionally, discovery is crucial not only to the non-moving party on a motion for summary judgment but also to the moving party who carries the burden of demonstrating the absence of any genuine issues of material fact.  That is why Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1 require that motions for summary judgment be

accompanied by statements of facts, admissible as evidence, as to which there is no genuine

issue for trial.  *See* FED. R. CIV. P. 56(C)(4); LOCAL CIV. R. 56.1(d).  In support of the instant

motion, East River's "Statement of Material Facts," Doc. 30 at 2-8, cites to no such evidence that

would entitle it to summary judgment.  In the Second Circuit, when a movant "fails to fulfill its

initial burden of providing admissible evidence of the material facts entitling it to summary

judgment, summary judgment must be denied, even if no opposing evidentiary matter is

presented, for the non-movant is not required to rebut an insufficient showing."  *See Giannullo v.

City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003).

　　　　To the extent that East River has provided evidence in support of its contention that there

are no triable issues with regard to the Government's Fifth Cause of Action, the Court declines to

consider that evidence because it was submitted only on reply as opposed to with East River's

original motion papers.  When East River filed the instant motion on July 1, 2014, it submitted a

seven-page Statement of Material Facts, Doc. 30, and a fifteen-page Certification by its counsel,

Bradley Silverbush.  Doc. 31.  Both contained assertions based solely on the allegations in the

Amended Complaint and the court opinions from the parties' cases in New York State Housing

Court and Supreme Court.  However, on September 15, 2014, East River filed its Reply

Memorandum of Law (Doc. 47), accompanied by a Declaration by Silverbush and a lengthy

exhibit consisting of East River's Second Supplemental Objections and Responses to the

Government's First Set of Interrogatories and Document Requests.  Doc. 46, Ex. A.[39]  In these

submissions, East River argues for the first time on reply that documents produced during

_____

[39] Notably, in this document, East River continually objects to the Government's interrogatories with the
protestation that they are "fishing expedition[s] in an effort to, and in hopes of, supporting Plaintiff's 'pattern and
practice' cause of action, which is the subject of the Defendant's pending motion for summary judgment and/or to
dismiss such claim."  Def.'s Reply Cert. in Supp. Mot. to Dismiss and/or Summ. J. (Doc. 46), Ex. A at 4, 7, 8, 9, 10,
11, 12, 14, 15.  This repeated objection lends credence to the Government's argument that summary judgment would
be inappropriate at this stage of the proceeding because discovery is ongoing.

discovery "reveal that excluding the complainants at issue here, there is not a single instance of East River denying a shareholder a reasonable accommodation."  Def.'s Reply Supp. Mot. to Dismiss and/or for Summ. J. at 2 (Doc. 47).

The Government urges, and the Court agrees, that the Declaration and Exhibit submitted in conjunction with East River's reply should not be considered because they improperly raise new issues.  *See* Gov't's Reply Mem. of Law in Opp'n to Def.'s Mot. to Dismiss and/or for Summ. J. at 4 (Doc. 58); *Rowley v. City of New York*, No. 00 Civ. 1793 (DAB), 2005 WL 2429514, at *5 (S.D.N.Y. Sept. 30, 2005) ("This Circuit has made clear it disfavors new issues being raised in reply papers.") (citations omitted); *United States v. Letscher*, 83 F. Supp. 2d 367, 377 (S.D.N.Y. 1999) (an argument raised on reply was "not a basis for denying summary judgment . . . because arguments raised in reply papers are not properly a basis for granting relief"); *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998) *aff'd*, 173 F.3d 843 (2d Cir. 1999) ("New arguments first raised in reply papers in *support* of a motion will not be considered.") (emphasis in original).  East River's contention in its reply papers that it has not denied any shareholders' requests for reasonable accommodations besides those submitted by the Complainants in this case would certainly appear directly relevant to counter the Government's allegations.  Nevertheless, the Court declines to consider that argument at present.

Consequently, East River's summary judgment motion is not only premature but also lacks evidentiary support.   The motion is denied without prejudice and with leave to renew after the completion of discovery.

## V.  Conclusion

For the reasons set forth above, the Government's motion to strike Defendant's Second Affirmative Defense is GRANTED; Defendant's motion for summary judgment and to sever the

Amended Complaint's remaining counts pertaining to Eisenberg and Gilbert is DENIED; and

Defendant's motion to dismiss and/or for summary judgment regarding the Government's Fifth

Cause of Action is DENIED.  The Clerk of the Court is respectfully directed to terminate the

motions (Docs. 22, 27, 30).

       It is SO ORDERED.

Dated:     March 2, 2015
           New York, New York

                                                Edgardo Ramos, U.S.D.J.